**BAYLOR COLLEGE OF MEDICINE, Appellant,**

**v.**

**Bernadette POKLUDA, Appellee.**

**Nos. 14–07–00962–CV, 14–07–01096–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

April 14, 2009.

Joanna Walker Raynes, Peggy R. Ban, Houston, for Appellants.

Jana K. Landry, Webster, for Appellees.

Panel consists of Justices YATES, SEYMORE, and BOYCE.

## OPINION

WILLIAM J. BOYCE, Justice.

This healthcare liability case is governed by chapter 74 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 74.001–.507 (Vernon 2005 & Supp.2008). In cause number 14–07–00962–CV, Baylor College of Medicine brings an interlocutory appeal from the trial court's October 1, 2007 order denying Baylor's motion to dismiss based on the asserted inadequacy of an expert report served by appellee Bernadette Pokluda. In cause number 14–07–01096–CV, Baylor brings an interlocutory appeal from the trial court's December 6, 2007 order denying Baylor's motion to dismiss based on the asserted inadequacy of the amended expert report served by Pokluda after the trial court granted a 30–day extension to cure a deficiency in the original report. We dismiss Baylor's interlocutory appeal in cause number 14–07–00962–CV for lack of jurisdiction. We affirm the trial court's order in cause number 14–07–01096–CV.

## BACKGROUND

This healthcare liability action arises from total knee arthroplasty surgery [1] performed by Baylor physician Dr. Mark Maffet on March 7, 2005. Pokluda sued Baylor and Maffet on February 23, 2007, alleging that Maffet was negligent in (1) failing to meet the standard of care for placement and monitoring of a tourniquet during surgery, causing Pokluda "numbness and weakness in her right foot with permanent nerve damage;" and (2) failing to (a) follow "applicable standards of care in disclosure and consent," (b) "use reasonable care, skill and diligence in the care and treatment" of Pokluda, and (c) "recognize the risks associated with the placement of the tourniquet."

Pursuant to a Rule 11 agreement, Baylor stipulated that Maffet was a Baylor employee acting in the course and scope of his employment when he treated Pokluda. She non-suited Maffet on April 4, 2007.

---

1. Arthroplasty is the operative formation or restoration of a joint, such as a hip or knee. *Sides v. Guevera*, 247 S.W.3d 293, 295 n. 1 (Tex.App.-El Paso 2007, no pet.). Here, the term describes surgery in which Pokluda's knee was replaced.

The trial court signed an "Order Acknowledging Non–Suit" on April 17, 2007.

On July 6, 2007, Pokluda filed an expert report and curriculum vitae prepared by Dr. Alexander Ghadially, a board certified orthopedic surgeon, in support of her claim against Baylor. Baylor challenged the expert report's adequacy and filed a motion to dismiss Pokluda's action with prejudice.

Baylor contended that the initial report was inadequate because Ghadially (1) did not establish his qualifications to opine about the standard of care for a total knee arthroplasty; (2) failed to delineate the standard of care applicable to an orthopedic surgeon who performs a total knee arthroplasty and the particulars of how Maffet deviated from that standard; and (3) failed to explain how Maffet's allegedly negligent acts caused Pokluda's injury.

Pokluda responded to Baylor's motion to dismiss on August 9, 2007 and asked for a 30–day extension to cure any deficiencies that the trial court identified in the expert report. Baylor replied to Pokluda's response on August 8, 2007. On October 1, 2007, the trial court signed an order denying Baylor's challenges to Ghadially's qualifications and to the sufficiency of the standard of care and breach portions of Ghadially's report, but granting its challenge to the causation portion. The trial court also granted an extension until October 15, 2007 for Pokluda to cure deficiencies in Ghadially's expert report as to causation.

Pokluda filed Ghadially's amended expert report on October 1, 2007. On October 18, 2007, Baylor filed a notice of appeal from the trial court's October 1, 2007 order denying its motion to dismiss with respect to Ghadially's qualifications and Maffet's breaches of the applicable standard of care. This accelerated appeal was assigned cause number 14–07–00962–CV.

Baylor filed a second motion to dismiss Pokluda's action with prejudice on October 19, 2007, challenging the amended expert report on three bases. Baylor contended that the amended report still was conclusory because it failed to explain how Maffet's allegedly negligent acts caused Pokluda's injuries. Baylor further contended that the report did not establish Ghadially's qualifications to opine about the standard of care for an orthopedic surgeon performing a total knee arthroplasty. Baylor also argued that Ghadially failed to delineate the standard of care applicable to an orthopedic surgeon who performs a total knee arthroplasty and failed to explain how Maffet deviated from that standard.

Pokluda responded to Baylor's second motion to dismiss on November 14, 2007. Baylor filed a reply to Pokluda's response on November 15, 2007. After considering Baylor's challenge to the amended expert report and motion to dismiss, and hearing arguments of both parties, the trial court signed an order on December 6, 2007 denying Baylor's challenge and motion to dismiss. Baylor filed a second notice of appeal; this timely appeal was assigned cause number 14–07–01096–CV.

## ANALYSIS

If a plaintiff in a healthcare liability suit does not serve a timely expert report within 120 days of filing suit, a trial court "shall" grant the defendant's motion to dismiss the case with prejudice. Tex. Civ. Prac. & Rem.Code Ann. § 74.351(b) (Vernon Supp.2008). An order that denies all or part of the relief sought in such a motion may be appealed immediately. *Id.* § 51.014(a)(9) (Vernon 2008); *Ogletree v. Matthews,* 262 S.W.3d 316, 319 (Tex.2007). However, "If an expert report has not been served within [120 days] because elements of the report are found deficient, the court may grant one 30–day extension

to the claimant in order to cure the deficiency." Tex. Civ. Prac. & Rem.Code Ann. § 74.351(c) (Vernon Supp.2008). The decision to grant an extension may not be appealed even when the extension is coupled with a denial of a motion to dismiss. *Id.* § 51.014(a)(9); *Ogletree,* 262 S.W.3d at 319, 321.

### I. Appeal From the Trial Court's October 1, 2007 Order

Baylor's first interlocutory appeal addresses the trial court's October 1, 2007 order denying Baylor's initial motion to dismiss based on its challenges to (1) Ghadially's qualifications; and (2) the adequacy of Ghadially's expert report with respect to the applicable standard of care and deviation from that standard. We begin by determining whether this court has appellate jurisdiction.

Baylor contends that appellate jurisdiction exists under section 51.014(a)(9) and *Ogletree,* 262 S.W.3d at 322. *Ogletree* held that "[n]o interlocutory appeal is permitted when a served expert report is found deficient and an extension of time granted." *Ogletree,* 262 S.W.3d at 322. Baylor attempts to distinguish *Ogletree,* arguing that Baylor is not appealing the "same deficiency that the court granted an extension to cure." Baylor argues that the appeal in cause number 14–07–00962–CV focuses on "the correctness of the [t]rial [c]ourt's decision regarding issues that [Pokluda] was not granted an extension to cure."

In practical terms, Baylor invites us to read *Ogletree* narrowly and apply it only to situations in which a "defendant is attempting to appeal the trial court's denial of a motion to dismiss where the order of denial is coupled with an extension to cure the very same deficiency that was the basis of the motion to dismiss that the trial court denied." We decline this invitation because the Texas Supreme Court drew no

such distinction in *Ogletree.* Rather, the supreme court stated broadly as follows:

> [W]hen a report has been served, the actions denying the motion to dismiss and granting an extension are inseparable. The statute plainly prohibits interlocutory appeals of orders granting extensions, and if a defendant could separate an order granting an extension from an order denying the motion to dismiss when a report has been served, section 51.014(a)(9)'s ban on interlocutory appeals for extensions would be meaningless. We do not think the Legislature contemplated severing the order denying the motion to dismiss from the order granting the extension when it expressly provided that orders granting extensions were not appealable on an interlocutory basis.

*Id.* at 321. (internal citations omitted). In *Badiga v. Lopez,* 274 S.W.3d 681, 683 (Tex. 2009), the court reiterated that "the denial of a motion to dismiss, coupled with the grant of an extension of time to cure a timely but deficient expert report, are inseparable for purposes of an appeal." Therefore, the denial of a motion to dismiss coupled with an extension of time to cure a deficient expert report is not appealable under section 51.014(a)(9). *See id.* Under *Ogletree* and *Badiga,* this court lacks jurisdiction to decide Baylor's interlocutory appeal from the trial court's October 1, 2007 order denying Baylor's motion to dismiss because that order also granted an extension of time to cure a deficiency in the report.

Baylor further argues that this court has jurisdiction to hear its appeal from the October 1, 2007 order at least as to Ghadially's qualifications. According to Baylor, "Because a trial court may only grant an extension to cure defects in the report itself and it may not grant an extension to

obtain a new expert to cure a 'deficient' expert, it follows that the trial court may not grant an extension to allow the plaintiff to rehabilitate the 'deficient' expert." In making this argument, Baylor relies on intermediate appellate cases holding that a claimant cannot file a report from a new expert during the 30-day extension to cure a deficiency in the original expert report. *See Danos v. Rittger*, 253 S.W.3d 294, 298 (Tex.App.-Houston [1st Dist.] 2007), *rev'd*, 253 S.W.3d 215 (Tex.2008), and *Methodist Health Ctr. v. Thomas*, No. 14-07-00085-CV, 2007 WL 2367619, at *4 (Tex.App.-Houston [14th Dist.] Aug. 21, 2007, no pet.) (mem.op.).

This argument fails for two reasons. First, it rests on a faulty premise in light of *Lewis v. Funderburk*, 253 S.W.3d 204, 208 (Tex.2008). *Funderburk* holds that section 74.351 allows a plaintiff to change experts midstream and serve a report from a new expert to cure a deficiency in the original expert's report. *Id.* Second, this argument is not really directed toward appellate jurisdiction; instead, it is aimed at a decision to grant an extension to allow a plaintiff to bolster an expert's qualifications. No such decision was made in this case. The trial court granted an extension so that Pokluda could address deficiencies in the initial report regarding causation. The extension was not granted so that she could bolster Ghadially's qualifications. In any event, the decision to grant an extension to address deficiencies in an expert report is not appealable under section 51.014(a)(9).

This court lacks jurisdiction to consider Baylor's interlocutory appeal from the October 1, 2007 order. This circumstance does not prejudice Baylor because, as discussed below, it can pursue an interlocutory appeal of the trial court's December 6, 2007 order denying its motion to dismiss.

We dismiss Baylor's interlocutory appeal in cause number 14-07-00962-CV.

## II. Appeal From the Trial Court's December 6, 2007 Order

Having determined that we lack jurisdiction to decide Baylor's appeal from the October 1, 2007 order, we turn to Baylor's appeal from the trial court's December 6, 2007 order. This court has appellate jurisdiction pursuant to section 51.014(a)(9) because the trial court's December 6, 2007 order denied Baylor's second motion to dismiss Pokluda's suit based upon an assertedly deficient amended expert report, and thereby denied all of the relief Baylor sought under section 74.351(b).[2] *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(9); *Ogletree*, 262 S.W.3d at 319.

### A. Standard of Review and Applicable Law

■ We review a trial court's denial of a motion to dismiss under section 74.351 for abuse of discretion. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex.2002) (per curiam); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex.2001); *Group v. Vicento*, 164 S.W.3d 724, 727 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). Similarly, we review a trial court's determination of whether a physician is qualified to opine in a health care liability case under an abuse of discre-

---

2. Baylor asserts that it "appeals Judge Elrod's granting of an extension to cure the insufficient causation portion of Dr. Ghadially's report, as well as Judge Gamble's order denying [Baylor's] motion to dismiss and challenge to Dr. Ghadially's qualifications, the sufficiency of the standard of care and causation portions of the second report." We do not address Baylor's complaint that an extension was unwarranted because we do not have appellate jurisdiction to reach that complaint. *In re Watkins*, 279 S.W.3d 633, 633–35 (Tex. 2009) (orig.proceeding).

tion standard. *Larson v. Downing*, 197 S.W.3d 303, 304–05 (Tex.2006) (per curiam); *Mem'l Hermann Healthcare Sys. v. Burrell*, 230 S.W.3d 755, 757 (Tex.App.-Houston [14th Dist.] 2007, no pet.).

To determine whether the trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles. *Larson*, 197 S.W.3d at 304–05; *see also Wright*, 79 S.W.3d at 52. When reviewing matters committed to the trial court's discretion, a court of appeals may not substitute its own judgment for the trial court's judgment. *Wright*, 79 S.W.3d at 52.

The trial court should grant a motion challenging the adequacy of an expert report only when it appears that the report does not represent a good faith effort to comply with the statutory definition of an expert report. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(*l*) (Vernon Supp. 2008). When determining if a good faith effort has been made, the trial court is limited to the four corners of the report and cannot consider extrinsic evidence. *See Wright*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 878.

An expert report is defined as a written report by an expert that provides a fair summary of the expert's opinions regarding (1) the applicable standard of care; (2) the manner in which the care provided failed to meet that standard; and (3) the causal relationship between that failure and the injury, harm, or damages claimed. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(r)(6) (Vernon Supp.2008); *Wright*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 879.

In compliance with these standards, the expert report must incorporate sufficient information to (1) inform the defendant of the specific conduct the plaintiff has called into question; and (2) provide a basis for the trial court to conclude the claims are meritorious. *Wright*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 879; *Patel v. Williams*, 237 S.W.3d 901, 904 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (citing *Palacios*, 46 S.W.3d at 879). A report cannot merely state the expert's conclusions about these elements. *Wright*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 879. The expert must explain the basis for his statements and must link his conclusions to the facts. *Wright*, 79 S.W.3d at 52. However, to avoid dismissal, a plaintiff need not present all the evidence necessary to litigate the merits of his case. *Palacios*, 46 S.W.3d at 879; *Patel*, 237 S.W.3d at 904. The report may be informal in that the information need not fulfill the same requirements as the evidence offered in a summary judgment proceeding or at trial. *Palacios*, 46 S.W.3d at 879; *Patel*, 237 S.W.3d at 904.

Additionally, in order to provide an acceptable report, the expert must establish that he is qualified to do so. Tex. Civ. Prac. & Rem.Code Ann. § 74.351(r)(5)(B) (Vernon Supp.2008). Qualifications must appear in the expert report and cannot be inferred. *See Olveda v. Sepulveda*, 141 S.W.3d 679, 683 (Tex.App.-San Antonio 2004, pet. denied); *Hansen v. Starr*, 123 S.W.3d 13, 19 (Tex.App.-Dallas 2003, pet. denied). Accordingly, analysis of expert qualifications under section 74.351 is limited to the four corners of the expert's report and the expert's curriculum vitae. *Burrell*, 230 S.W.3d at 758; *see also Palacios*, 46 S.W.3d at 878.

To be qualified to provide opinion testimony regarding whether a physician departed from the accepted standard of health care, an expert must satisfy section 74.401. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(r)(5)(A) (Vernon Supp.2008). Section 74.401 provides in pertinent part:

(a) In a suit involving a health care liability claim against a physician for injury to or death of a patient, a person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care only if the person is a physician who:

(1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;

(2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

(c) In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness:

(1) is board certified or has other substantial training or experience in an area of medical practice relevant to the claim; and

(2) is actively practicing medicine in rendering medical care services relevant to the claim.

Id. § 74.401(a), (c) (Vernon 2005).

We now turn to Baylor's specific challenges.

**B.  Dr. Ghadially's Qualifications**

■ Baylor contends that the trial court abused its discretion by denying its second motion to dismiss because (1) Ghadially is not qualified to opine on the applicable standards of care in this case; and (2) "[b]oard certification in the same specialty as the physician whose care is at issue is not sufficient to establish that the expert is qualified to render an opinion on

the specific subject at issue." Baylor argues that Ghadially was required to establish that he is qualified to testify regarding total knee arthroplasty procedures and the use of tourniquets because his criticism of Maffet stems from the use of a tourniquet during Pokluda's total knee arthroplasty. According to Baylor, Ghadially never established that he has (1) knowledge of the standard of care relating to a total knee arthroplasty and the placement or maintenance of a tourniquet during such an orthopedic procedure; (2) the training or experience to offer an expert opinion regarding the standard of care; (3) placed and maintained tourniquets during total knee arthroplasty procedures; and (4) instructed others in total knee arthroplasty surgery and in the proper placement or maintenance of a tourniquet during such an orthopedic procedure.

Baylor further contends that Ghadially's curriculum vitae fails to show that he is qualified to opine in this case because it does not list any continuing medical education, publications or presentations by Ghadially dealing with knee arthroplasty surgery or "the use of tourniquets during any orthopedic procedure."

Baylor does not dispute that Ghadially is licensed in Texas and was practicing medicine when he wrote his report and when Pokluda's claim arose—the initial statutory requirements to establish an expert's qualifications. See id. § 74.401(a)(1).

■ In order to qualify as an expert in a particular case, a physician need not be a practitioner in the same specialty as the defendant physician. *Kelly v. Rendon*, 255 S.W.3d 665, 674 (Tex.App.-Houston [14th Dist.] 2008, no pet.); *Blan v. Ali*, 7 S.W.3d 741, 745 (Tex.App.-Houston [14th Dist.] 1999, no pet.); *see also Broders v. Heise*, 924 S.W.2d 148, 153–54 (Tex.1996). The test is whether the report and curriculum

vitae establish the witness's knowledge, skill, experience, training, or education regarding the specific issue before the court that would qualify the expert to give an opinion on that particular subject. *Roberts v. Williamson*, 111 S.W.3d 113, 121 (Tex.2003). In assessing whether a witness is qualified on the basis of training or experience to render expert opinions, a trial court shall consider whether the proffered witness (1) is board certified or has other substantial training or experience "in an area of medical practice *relevant* to the claim," and (2) is actively practicing medicine "in rendering medical care services *relevant* to the claim." Tex. Civ. Prac. & Rem.Code Ann. § 74.401(c) (emphasis added).

Ghadially is a board certified orthopedic surgeon with 28 years of experience practicing surgery. His curriculum vitae lists medical continuing education in orthopedic surgery. Ghadially states in his amended report, "I have treated many patients over the years with problems such as ... Pokluda['s]. I have performed many surgeries similar to that which she subsequently underwent including total joint arthroplasty." He further states:

I am familiar with the **standard of care** applicable to Orthopaedic surgery because of the following facts:

- It is necessary for me to know the standard of care in order for me to practice my specialty,

- I am required in my position as a member of the medical staff at various hospitals to practice within the standard of care,

- I am familiar with the peer-reviewed literature and the standards of care contained therein,

- I had to meet the standard of care in order to become board certified.

- The standard of care as it applies to me applies in an identical manner to the practice of Dr. Mark Maffet.

I am qualified to recognize a **breach in the standard of care** because of the following facts:

- I know what the standard of care is because of the facts above,

- I have been board certified for twenty eight years,

- I have practiced surgery for twenty eight years,

- I am familiar with the peer-reviewed literature,

- I have worked in environments similar to that of Dr. Mark Maffet,

I am qualified to render an opinion as to **causation** because of the following facts:

- My training to become board certified,

- My twenty eight years of experience,

- My experience as a medical director,

- My knowledge of the peer-reviewed literature,

- My review of thousands of medical cases,

- My personal observations of the outcomes of treatment,

- My personal observations of the outcomes due to failure of treatment,

- My personal observations of surgical misadventure,

- My experience in identifying a breach in the standard of care and how it results in a specific harm.

I reviewed the following in preparation of this report.

- Medical records from CLEAR LAKE NEUROLOGY

- Imaging studies from BAYLOR COLLEGE OF MEDICINE Department of Orthopaedics

- Medical records of MARK MAFFET, M.D., P.A.

- Medical records of HERMANN MEMORIAL CITY HOSPITAL

- Medical records of MEMORIAL VILLAGE SURGERY CENTER....

(emphasis in original). Ghadially also discusses the applicable standards of care for Pokluda's treatment during the total knee arthroplasty. He concludes his report by stating, "My opinions in this matter are supported by the factual evidence in the medical records and my 28 years of experience as a practicing Orthopaedic surgeon, as well as my knowledge of the evidence-based peer reviewed literature."

Based on Ghadially's education, training and experience in treating patients similarly situated to Pokluda and performing surgeries similar to the surgery Pokluda underwent, the trial court acted within its discretion in concluding that Ghadially is qualified to render an opinion on the standard of care at issue in this case. *See Kelly*, 255 S.W.3d at 674. We reject Baylor's contention that Ghadially is unqualified because he has not "performed the surgery at issue—total knee replacement." We have found no authority for the proposition that a surgeon must have performed exactly the same surgery as the defendant physician in order to render an expert opinion. The standard is not so narrow. The statute provides that a witness is qualified if he is board certified and "is actively practicing medicine in rendering medical care services *relevant* to the claim." Tex. Civ. Prac. & Rem.Code Ann. § 74.401(c) (emphasis added). Ghadially satisfies this requirement. The trial court acted within its discretion in concluding that Ghadially's amended report is not inadequate and satisfies the qualification requirements set forth in section 74.401. *See id.* § 74.401(a), (c).

Baylor next asserts that an expert's "board certification in the same specialty as the physician whose care is at issue is not sufficient to establish that the expert is qualified to render an opinion on the specific subject at issue in a case." According to Baylor, an expert's board certification does not qualify the expert to testify about every medical procedure encompassed by that specialty. Baylor argues that Ghadially never establishes his knowledge of the standard of care relating to total knee arthroplasty, or the placement and maintenance of a tourniquet during an orthopedic procedure.

To support its assertion that board certification in the same specialty is not sufficient to establish that the expert is qualified to render an opinion, Baylor cites *Richburg v. Wolf*, 48 S.W.3d 375, 378 (Tex. App.-Eastland 2001, pet. denied). Baylor misplaces its reliance on *Richburg*. In *Richburg*, the expert's qualifications or board certification were not at issue; rather, the court held that the expert's report was inadequate because it (1) lacked specificity as to the applicable standard of care and the breach of that care; and (2) failed to explain the causal relationship between the defendant physician's treatment and the damages suffered. *Id.* at 378.

Further, section 74.401(c)(1) states that the court should consider whether the expert is "board certified or has substantial training or experience in an area of medical practice relevant to the claim." Tex. Civ. Prac. & Rem.Code Ann. § 74.401(c)(1). The statute does not require an expert to have performed a specific procedure in order to opine. Additionally, we already have held that the trial court acted within its discretion when it concluded that Ghadially's amended report and curriculum vitae establish that he has sufficient knowledge of the standard of care relating to a total knee arthroplasty;

that he is qualified on the basis of training and experience; and that he practiced medicine at the time he rendered his opinions.

We hold that the trial court acted within its discretion by denying Baylor's second motion to dismiss as to Ghadially's qualifications, and we overrule Baylor's first issue.

## C. Standard of Care and Breach

In its second issue, Baylor contends that the amended expert report is defective and does not represent a good faith effort to comply with the statutory requirements for an expert report because it fails to set forth "the applicable standard of care for an orthopedic surgeon when a tourniquet is used" during a total knee arthroplasty and Maffet's deviation from that standard. Baylor claims that Ghadially lists four standards of care, but "utterly fails to provide an opinion regarding what those standards entail and how Maffet's actions breached such standards."

■ An expert report need not marshal the plaintiff's proof, but it must include the expert's opinions on all three statutory elements. *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 859 (Tex.App.-Houston [1st Dist.] 2006, no pet.). Although it is not sufficient for an expert simply to state that he knows the standard of care and assert it was not met, a fair summary is something less than a full statement of the applicable standard of care and how it was breached. *Palacios*, 46 S.W.3d at 880. A fair summary need only set out what care was expected but not given. *Id.*

■ With respect to the applicable standard of care, Dr. Ghadially states in pertinent part:

The applicable standard of care as to Dr. Mark Maffet in the treatment of Bernadette Pokluda requires that the patient

be careful [sic] assessed preoperatively to evaluate the risk/benefit ratio of undergoing a major elective procedure.

Once embarked upon the surgical intervention, the applicable standard of care as to Dr. Mark Maffet in his treatment of Bernadette Pokluda is to take care not to injure nerves during the surgical procedure from the tourniquet.

The applicable standard of care as to Dr. Mark Maffet in the treatment of Bernadette Pokluda requires that care be taken that the tourniquet be properly padded and maintained during the surgical procedure.

The applicable standard of care as to Dr. Mark Maffet in the treatment of Bernadette Pokluda requires that care be taken that the patient's peroneal nerve be properly padded and protected at all times.

These statements address the standard of care applicable before surgery regarding patient evaluation, and the standard of care during surgery. Ghadially states that a patient should be carefully evaluated before surgery. Ghadially also describes the proper conduct of a surgeon using a tourniquet during surgery, noting the need "to take care not to injure" the patient's nerves "during the surgical procedure from the tourniquet," to properly pad and maintain the tourniquet during the surgical procedure, and to properly pad and protect the patient's peroneal nerve at all times. Ghadially addressed the standards in sufficient detail to apprise Baylor of the care expected from Maffet.

■ With regard to breach of the standard of care, Ghadially states:

Dr. Mark Maffet deviated from the standard of care by injuring the patient's nerve during surgery.

Dr. Mark Maffet deviated from the standard of care by not carefully maintaining

the tourniquet during the surgical procedure.

Dr. Mark Maffet deviated from the standard of care by not carefully protecting the peroneal nerve during the surgical procedure.

The trial court acted within its discretion when it concluded that Ghadially provided a fair summary of how Maffet deviated from the described standards of care during the surgical procedure. Ghadially opined that Maffet breached the applicable standards of care because he injured Pokluda's nerve during surgery, he failed to maintain the tourniquet during the surgical procedure, and he failed to protect the peroneal nerve during the surgical procedure.

The trial court acted within its discretion in finding that Ghadially, in his amended report, adequately complied with the standard of care and breach requirements of section 74.351 with respect to the surgical procedure.

### D. Causation

█ In its third issue, Baylor argues that the amended expert report is defective because Ghadially's opinions on causation "are conclusory and do not adequately establish the causal link between Dr. Maffet's alleged breach of the standard of care and the claimed damages." We disagree.

Ghadially opines that Pokluda "was injured as a proximate result of the surgical intervention" and that she "suffered injury to her nerve either as a result of the tourniquet, improper tourniquet installation and padding or improper maintenance and use of the tourniquet or a combination of the above." He states that

[t]he manner in which the improper tourniquet installation and padding cause the harm in this case is as follows. The tourniquet cuts of[f] the blood supply to the tissues distal to the tourniquet and if left on too long or with too high a pressure causes nerve damage. If the padding is not adequate or improperly placed then excessive pressure can be transmitted to the underlying structures and, if as in this case excessive, then nerve damage occurs.

Ghadially also opines that the "new neurological complaints and post-operative problems are a proximate result of the failure of Dr. Mark Maffet to take care that the tourniquet be properly padded and maintained during the surgical procedure."

The trial court acted within its discretion in concluding that Ghadially's opinions regarding causation suffice to meet the minimum statutory requirements. *See Lakshmikanth v. Leal,* 13–08–00389–CV, 2009 WL 140741, at *2–3 (Tex.App.-Corpus Christi Jan.22, 2009, pet. filed) (mem.op.) (trial court acted within its discretion in concluding that expert's opinion on causation was not conclusory); *Renaissance Surgical Ctrs.—S. Tex., L.L.P. v. Jimenez,* No. 13–07–121–CV, 2008 WL 3971096, at *9–10 (Tex.App.-Corpus Christi Aug.28, 2008, no pet.) (mem.op.) (same); *see also Mosely v. Mundine,* 249 S.W.3d 775, 780–81 (Tex.App.-Dallas 2008, no pet.) (trial court acted within its discretion in concluding that expert's opinion as to causation was not mere conjecture and speculation); *Apodaca v. Miller,* No. 08–06–00226–CV, 2008 WL 3166967, at *4 (Tex.App.-El Paso Aug.7, 2008, no pet.) (expert report provided a fair summary of the causal connection between the breach of care and plaintiff's injuries); *Springer v. Johnson,* No. 07–07–0424–CV, 2008 WL 2346385, at *8–9 (Tex. App.-Amarillo June 4, 2008, no pet.) (trial court did not abuse its discretion in concluding that expert report met the statutory causation requirement); *Baptist Health Sys. v. Pedraza,* No. 04–07–00404–CV, 2007 WL 3355405, at *3–4 (Tex.App.-San Antonio Nov.14, 2007, no pet.) (mem.op.)

(trial court did not abuse its discretion in determining that the expert report was adequate as to causation). Ghadially explains how nerve damage occurs; when the tourniquet is improperly installed or padded, "the tourniquet cuts off the blood supply to the tissues distal to the tourniquet" and "if left with too high a pressure" causes nerve damage. Ghadially opines that the nerve damage occurred in this case because excessive pressure was transmitted due to improper padding or placement of the tourniquet during surgery.

Baylor argues that Maffet's alleged breaches of the standard of care are not consonant with Ghadially's assertions regarding causation. According to Baylor, the alleged deviations from the standard of care occurred during surgery but Ghadially's "conclusions regarding causation relate to actions taken before surgery." Baylor's linkage between causation and actions taken before surgery is based on Ghadially's conclusion that "improper tourniquet installation and padding cuts off the blood supply and causes nerve damage." Baylor's argument assumes that tourniquet installation and padding placement cannot be part of "the surgical procedure."

The trial court was not required to make this assumption or to read the report as narrowly as Baylor does. Ghadially states that Maffet's deviations from the standard of care include "not carefully protecting the peroneal nerve during the surgical procedure." The trial court reasonably could have read Ghadially's reference to "protecting the peroneal nerve" as encompassing the installation, padding, and maintenance of the tourniquet during the surgical procedure so as to avoid cutting off the blood supply and causing nerve damage.

█ The two-fold purpose of an expert report under section 74.351 is to inform the defendant of the specific conduct the plaintiff has called into question, and to provide the trial court with a basis to determine whether the plaintiff's claims have merit. *Patel*, 237 S.W.3d at 906. Pursuant to this standard, we conclude that Ghadially's amended report sufficiently addresses the element of causation, linking the alleged breaches of the standard of care during the surgical procedure to Pokluda's alleged injury—numbness and weakness in Pokluda's right foot with permanent nerve damage. Therefore, keeping in mind that expert reports are a preliminary method to show a plaintiff has a viable cause of action that is not frivolous or without expert support, we hold the trial court acted within its discretion in concluding that the amended report complied with section 74.351's causation requirement. We overrule Baylor's third issue.[3]

3. Baylor also argues that Ghadially's report is deficient because it does not state how Maffet deviated from the standard of care for conduct before surgery. We do not address this contention because its resolution is not necessary to final disposition of the appeal. *See* Tex.R.App. P. 47.1. Under section 74.351(a), the obligation to serve an expert report meeting section 74.351(r)(6)'s requirements exists with respect to "each physician or health care provider against whom a liability claim is asserted." The word "claim" is defined to mean "a health care liability claim." Tex. Civ. Prac. & Rem.Code Ann. § 74.351(r)(2) (Vernon Supp.2008). The phrase "health care liability claim" is defined as "a cause of action against a ... physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care...." *Id.* § 74.001(a)(13) (Vernon 2005). Under section 74.351(b)(2), the remedy for failure to timely serve an expert report is a trial court order that "dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim." We have concluded that Ghadially's amended report satisfies section 74.351(r)(6)'s requirements insofar as Pokluda's "health care liability claim" is predicated on Maffet's alleged deviations from the standard of care during

**CONCLUSION** ·

We dismiss Baylor's interlocutory appeal in cause number 14–07–00962–CV for lack of jurisdiction.

In cause number 14–07–01096–CV, the trial court acted within its discretion in concluding that Ghadially established the necessary qualifications, and that his amended report adequately complied with the standard of care, breach, and causation requirements of section 74.351 relating to Maffet's actions during the surgical procedure. Accordingly, we affirm the trial court's December 6, 2007 order.

surgery. Therefore, dismissal of Pokluda's "health care liability claim" against Maffet is not warranted under section 74.351(b)(2) regardless of whether Ghadially's report also satisfies section 74.351(r)(6)'s requirements with respect to Maffet's alleged deviations from the standard of care before surgery.