**Affirmed and Memorandum Opinion filed July 17, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-00658-CV

**FATIMA IBRAHIM, M.D., Appellant**

**V.**

**LISA GILBRIDE AND PETE GILBRIDE, Appellees**

**On Appeal from the 152nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2009-25767**

## M E M O R A N D U M   O P I N I O N

Fatima Ibrahim, M.D. brings this interlocutory appeal from the trial court's denial of her motion to dismiss a medical malpractice lawsuit filed against her by appellees Lisa and Pete Gilbride. In a prior appeal, this court found that the Gilbrides' expert's first report was deficient. *Ibrahim v. Gilbride*, No. 14-09-00938-CV, 2010 WL 5064430, at *12 (Tex. App.—Houston [14th Dist.] Dec. 9, 2012, no pet.). However, we remanded to permit the trial court to determine whether to grant a 30-day extension to file an amended report. *Id.* (citing Tex. Civ. Prac. & Rem. Code § 74.351(c)). On remand, the trial court granted such an extension, an amended report was submitted, and Ibrahim filed a second

motion to dismiss, which the trial court denied.  In a single issue in this second appeal, Ibrahim contends that the trial court erred in denying the motion to dismiss.  We affirm the trial court's order.

## I.  Background

The Gilbrides sued Dr. Ibrahim, a neurologist, claiming she was negligent in her medical treatment of Lisa.  In their petition, the Gilbrides specifically allege that in April 2006, Lisa was hospitalized for recurrent seizures and thereafter began treatment with Ibrahim.  Despite the fact that diagnostic testing conducted in July 2006 confirmed Lisa was suffering from ongoing seizure activity, Ibrahim allegedly failed to prescribe anti-seizure medications.  Consequently, according to the Gilbrides, in August 2006, Lisa suffered a grand mal seizure, struck her head during the seizure, and suffered brain hemorrhages and other injuries requiring emergency brain surgery.

In support of their petition, the Gilbrides served on Ibrahim the expert report of Donald W. Smith, M.D.  In our first opinion, we found this report to be deficient because therein Smith failed to (1) establish that he has sufficient training, experience, and knowledge in an area of medical practice relevant to the claim to permit him to opine on the medical issues raised in this case; and (2) adequately set forth the standard of care, the way in which the standard was breached by Ibrahim, and the causal connection between the breach by Ibrahim and the damages allegedly suffered by Lisa.  In his amended report, Smith has attempted to correct each of these identified areas of deficiency.  In this appeal, Ibrahim again argues that Smith has failed to provide adequate information in each of these areas.

## II.  Standards of Review

Chapter 74 of the Texas Civil Practice and Remedies Code governs the Gilbrides' health-care-liability claims.  Tex. Civ. Prac. & Rem. Code § 74.001–.507.  Under this chapter, a claimant is required to serve on a defendant physician "one or more expert reports, with a curriculum vitae of each expert listed in the report."  *Id*. § 74.351(a). We

2

employ an abuse-of-discretion standard in reviewing a trial court's determinations regarding an expert's qualifications to render an opinion and the adequacy of the expert's report. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Broders v. Heise*, 924 S.W.2d 148, 151 (Tex. 1996). As proponent of the expert, the plaintiff bears the burden to show the expert is qualified and the expert report satisfies the statutory requirements. *Mem'l Hermann Healthcare Sys. v. Burrell*, 230 S.W.3d 755, 757 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

To be qualified to provide opinion testimony regarding whether a physician departed from the accepted standard of medical care, the expert must satisfy section 74.401. *See* Tex. Civ. Prac. & Rem. Code § 74.351(r)(5)(A). Under section 74.401, the expert must be a physician who:

> (1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;
>
> (2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
>
> (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

*Id*. § 74.401(a).

"In determining whether a witness is qualified on the basis of training or experience" to offer an expert opinion regarding the applicable standards of medical care, "the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness: (1) is board certified or has other substantial training or experience in an area of medical practice relevant to the claim; and (2) is actively practicing medicine in rendering medical care services relevant to the claim." *Id*. § 74.401(c).

An "expert report" is defined as "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding the applicable standards of care, the manner in which the care rendered by the physician . . . failed to

3

meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." Tex. Civ. Prac. & Rem. Code § 74.351(r)(6). The expert cannot merely state his conclusions about these elements but instead must explain the basis for his statements and link his conclusions to the facts. *Palacios*, 46 S.W.3d at 879; *Baylor College of Med. v. Pokluda*, 283 S.W.3d 110, 117 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The trial court should grant a motion challenging the adequacy of an expert report only if it appears to the court, after a hearing, that the report does not represent an objective good faith effort to comply with the statutory definition of an expert report. Tex. Civ. Prac. & Rem. Code § 74.351(1).

### III. Qualifications

Respecting Smith's qualifications to opine regarding the medical issues raised in this case, as governed by subsections 74.401(a) and (c), we stated in our previous opinion that Smith had failed to establish that he has sufficient training, experience, and knowledge in an area of medical practice relevant to the claim to permit him to opine on the medical issues raised in the lawsuit. *Ibrahim*, 2010 WL 5064430, at *8-9. We further noted that Smith failed to explain whether he was actively providing medical care services relevant to the Gilbrides' claim, and we held that he did not sufficiently explain how he acquired knowledge of the accepted standard of care. *Id*. at *8. Overall, we found Smith's report to be vague regarding his area of practice; Smith did not indicate whether he had a specialty, whether he was board certified, or whether he had treated patients specifically for seizure disorders. *Id*. at *6.

In his amended report, Smith states that he has "diagnosed, treated and managed dozens of patients for seizure disorders including epilepsy." He further states that he is "currently the primary care physician for 6 patients who suffer from seizure disorders or epilepsy." He also provides some details regarding the patients and his treatment of them.[1] Regarding his knowledge of the accepted standards of care, Smith states,

---

[1] In her brief, Ibrahim asserts that Smith still fails to specify whether he has diagnosed and treated patients for neurological disorders. This is inaccurate. In the amended report, Smith is quite clear that he

4

I am experienced in and familiar with the standard of medical care involved in prescribing and managing the various medications used to treat seizure disorders and epilepsy. I am experienced in and familiar with the use of various modalities of diagnostic testing used in the diagnosis and treatment of seizure disorders and epilepsy, including the proper use and clinical interpretation of electro-encephalograms and their corresponding reports, and the applicable medical standard of care for same.

We find that these additions to Smith's report are sufficient to demonstrate that he has the experience and knowledge necessary to opine on issues concerning the proper diagnosis and treatment of patients with seizure disorders. *See Burrell*, 230 S.W.3d at 759-62 (upholding trial court's ruling that expert was qualified to opine that hospital's substandard care caused patient's decubitus ulcers where, over the course of his career, he had treated patients with decubitus ulcers and trained nurses and other personnel in proper techniques to prevent this condition); *Ibrahim*, 2010 WL 5064430, at *6 ("[D]etermining whether the expert has substantial experience in an area of medical practice relevant to the claim might involve focusing on the type of medical-care services he has provided instead of merely the name of his particular practice.").

Although Smith apparently is not a neurologist or board certified in an area dealing specifically with seizure disorders, those are not requirements for admission of his expert testimony. *See Broders*, 924 S.W.2d at 153-54; *Pokluda*, 283 S.W.3d at 117; *see also Ibrahim*, 2010 WL 5064430, at *6 ("The test is whether the report and CV establish the witness's knowledge, skill, experience, training, or education regarding the specific issue before the court that would qualify the expert to give an opinion on the subject at issue.").[2]

### IV. Standards of Care, Breach, and Causation

Regarding the deficiencies in Smith's initial report concerning the accepted

---

has diagnosed and treated patients for seizure disorders and is currently treating patients for seizure disorders.

[2] These factors may be considered by the jury in weighing the import of his testimony.

standard of care and breach thereof, we stated in our previous opinion that his use of certain phrases and terms (*e.g.*, "seizure disorder" and "anti-seizure medications") was too vague and general to properly inform Ibrahim of the specific conduct being called into question or to provide the court with a basis for determining the Gilbrides' claims have merit. *Ibrahim*, 2010 WL 5064430, at \*11; *see also* Tex. Civ. Prac. & Rem. Code § 74.351(r) (providing requirements for expert reports under chapter 74). We further stated that Smith needed to explain the pathological basis for Lisa's disorder, why medication was the only acceptable form of treatment, and what specific medication should have been used. *Id.* We also noted that Smith failed to indicate what factors he believed led to the decision not to pursue medication, as well as whether is the decision was Ibrahim's, Lisa's, or a joint decision. *Id.*

In his amended report, Smith addressed these concerns by adding significantly more detail regarding Lisa's condition, Ibrahim's treatment of her, and what Ibrahim should have done differently. For example, Smith stated that he reviewed the relevant clinical records and explained that the results, "were abnormal with ongoing seizure activity, and documented the presence of focal cerebral dysfunction with an irritable potentially epileptogenic component in the region." He further described in detail her relevant medical history, including a pattern of seizures, concluding it presented "a clear clinical picture of a patient who was, in reasonable medical probability, suffering from epilepsy with tonic-clonic features." Regarding the proper course of treatment, Smith opined that given Lisa's medical history and clinical records, it was mandatory that she be immediately started on an appropriate anti-epilepsy medication. He specifically stated that particular dosages of Dilantin or Phenobarbital should have been prescribed because they have long clinical histories of "successfully managing seizure disorders including epilepsy." Further according to Smith, Ibrahim should have monitored Lisa closely for the next 30 days after starting her on the medication "to manage her blood serum levels to determine that the prescribed dosage was within the therapeutic range," and she should have continued to follow up either quarterly or semi-annually.

In the amended report, Smith additionally addressed the question of what led to the decision not to medicate. Smith noted an apparent disagreement between the parties on this issue, with Ibrahim's records indicating the treatment was discussed but the patient had declined and the Gilbrides both denying that such treatment was even mentioned. Smith further noted that the Gilbrides contend Lisa would have taken the medication had it been prescribed by Ibrahim. Moreover, Smith states that even had Ibrahim left the decision to her patient, that alone would have breached the accepted standard of care. The additions to Smith's report were sufficient to address our earlier concerns, and altogether, the report now sufficiently apprises Ibrahim of the specific conduct being called into question and provides the court with a basis for determining the claims have merit. *See Palacios*, 46 S.W.3d at 878-79; *Pokluda*, 283 S.W.3d at 117.

In our previous opinion, we held that Smith failed to sufficiently explain how the administration of particular medicine or medicines would have prevented Lisa's seizures. *Ibrahim*, 2010 WL 5064430, at *11. More generally, we noted that Smith failed to provide a causal connection between the alleged breach of the standard of care and the grand mal seizure that allegedly resulted in emergency brain surgery. *Id.* In his amended report, Smith detailed the chain of causation from Lisa's seizure disorder to the emergency brain surgery.[3] He further directly linked the failure to prescribe anti-seizure medication to Lisa's having a grand mal seizure, which in turn caused her to fall and hit her head, resulting in a subdural hematoma requiring brain surgery. These additions to Smith's report also now render the report sufficient on causation.

---

[3] Ibrahim suggests that page four of Smith's amended report, on which he primarily discussed causation, was not timely served. She contends that Smith timely faxed an incomplete report (sending pages 1-3 along with page 5, but not page 4), and only supplied the missing page after the deadline. The Gilbrides' attorney, however, submitted an affidavit in which he averred that he had personally and timely faxed the full amended report to Ibrahim's attorney's office from the fax machine at his desk and did not receive any error notice and has never had any problems previously in regards to faxing information to Ibrahim's attorney. We find that this "direct, positive testimony of telephonic document transfer" was sufficient to support the trial court's consideration of Smith's entire amended report. *Strobel v. Marlow*, 341 S.W.3d 470, 476-78 (Tex. App.—Dallas 2011, no pet.). Consequently, the trial court did not abuse its discretion in considering the entire report.

## V. Conclusion

Because in his amended report Smith corrected the deficiencies we noted existed in his original report, the trial court did not abuse its discretion in denying Ibrahim's motion to dismiss. *See Palacios*, 46 S.W.3d at 875. Accordingly, we overrule Ibrahim's sole issue.

We affirm the trial court's order.

/s/     Martha Hill Jamison
        Justice

Panel consists of Chief Justice Hedges and Justices Jamison and McCally.