Opinion issued October 11, 2018



In The

# Court of Appeals

### For The

## First District of Texas

————————————

### NO. 01-18-00309-CV

————————————

**KENNETH J. LEE, M.D., K.L. MODERN SPINE, PLLC, AND KARLYN J. POWELL, M.D., Appellants**

**V.**

**TONY LE, Appellee**

---

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-62649**

---

### MEMORANDUM OPINION

Tony Le underwent spinal surgery. He awoke from the surgery feeling intense pain in his right arm and hand and continues to suffer from permanent nerve damage. He filed suit, alleging negligence and gross negligence. He filed an expert report. Kenneth J. Lee, M.D., K.L. Modern Spine, PLLC, and Karlyn J. Powell, M.D. filed

objections to the expert report. The trial court overruled the objections. In three issues on appeal, Dr. Lee and K.L. Modern Spine argue that the trial court abused its discretion by not dismissing the suit because the expert was not qualified to opine on Dr. Lee's duties and because the report is conclusory as to breach and as to causation. In three issues on appeal, Dr. Powell argues that the trial court abused its discretion by not dismissing the suit because the report is contradicted by the facts presented in the report and because the report is conclusory as to standard of care and as to breach. They all also raise a fourth issue arguing Dr. Yong should not be allowed more time to supplement his report.

We affirm.

## Background

Le was experiencing pain in his neck that radiated into his arms, extending to his elbows. He also experienced numbness and tingling in his arms, again extending to his elbows. According to the expert report at issue in this appeal, Dr. Lee diagnosed Le with "displacement of cervical disc, cervicalgia, cervical radiculitis, and cervical stenosis." Dr. Lee recommended surgery, and Le agreed.

Dr. Lee performed the surgery on October 8, 2015. His physician's assistant, Sarah Ngo, was also present.[1] Dr. Powell was the anesthesiologist.

---

[1] Le brought suit against K.L. Modern Spine as Ngo's employer.

Upon awakening from surgery, Le reported pain in his right arm and hand. He was hospitalized for two days as doctors attempted to diagnose and alleviate the pain. According to the expert report, a doctor at the hospital "concluded that the issues with Mr. Le's right hand were likely related to inflammation or compression of the ulnar nerve.

On September 21, 2017, Le filed suit, alleging negligence from the surgery, which led to permanent injury to his ulnar nerve. Le named Dr. Lee, K.L. Modern Spine, and Dr. Powell as defendants to the suit. Le also filed an expert report in the suit.

The report was prepared by Dr. Robert Jason Yong, "the Medical Director of the Pain Management Center at Brigham and Woman's Faulkner Hospital, in Boston, Massachusetts, which is affiliated with Harvard Medical School." Dr. Yong is also on the faculty of Harvard Medical School, "where I am a Clinical Instructor in Anesthesia."

Dr. Yong explained the importance of correct positioning and padding of the patient during surgery. He wrote,

> During spine surgery, patients are placed in positions that are not physiologic, would not be tolerated for prolonged periods by the patient in the awake state, and may lead to post-surgical complications. Patients that are awake or lightly sedated can communicate when they experience pain or discomfort. However, anesthetized patients are dependent on their physicians and surgical team to protect them from injury because they will not feel or complain of pain and are at risk for injury due to improper positioning. Thus, physicians, nurses, and other

3

health care providers must employ appropriate patient positioning techniques to avoid injury to the patient.

According to Dr. Yong, the risks associated with improper arm placement and padding have been well known to "orthopedic surgeons, anesthesiologists, physician assistants, nurses, and other medical professionals in the United States for many years" and, accordingly, they were aware or should have been aware of Le's risk of injury. As a result, Dr. Yong, opined, they all had a duty to prevent Le's injury. The duty "includes but is not limited to positioning, padding, and supporting him in such a way that his ulnar nerve is not subjected to compression and/or stretching." The duty "also includes continually monitoring and documenting the positioning and padding of a patient during the surgical procedure." Finally, he identified a duty to "perform a preoperative assessment of the patient's risk factors for nerve injury."

For the duty to pad, position, and monitor the position of the arm, Dr. Yong asserted, "in the operating room, the entire health care staff is responsible for the perioperative positioning and padding of a patient, with the physicians bearing the most responsibility." Accordingly, while all of the defendants owed the duty, the amount of responsibility varied. "[U]ltimate responsibility for positioning and padding lies with the physicians involved in the surgery." Between the physicians, "[w]hile the surgeon is operating, responsibility for the patient's position primarily belongs with the anesthesiologist."

4

Dr. Yong described how an arm should be cared for during the type of surgery Le underwent, including proper positioning and padding of the arm, how the arm is taped, repositioning of the arm during surgery, and positioning to be avoided. In this description, he explained that "the arms should be abducted up to a sixty-degree angle." When a shoulder roll is used, Dr. Yong said, it should be "placed to avoid stretching of the ulnar nerve."

In contrast to this, Dr. Yong observes that the notes from the surgery indicate that "a shoulder roll was . . . placed under [Le's] shoulders and his neck was placed in a slight amount of extension." In addition, the notes from surgery indicate that Le's arms were tucked by his side instead of at a sixty-degree angle.

Dr. Yong determined that each of the defendants breached their duties to Le by allowing "compression and/or stretching of Mr. Le's ulnar nerve." Specifically, Dr. Yong determined that the defendants, among other things, failed to properly position, reposition, and monitor Le's shoulders, "which caused stretching of the ulnar nerve" and that they failed to position, reposition, and monitor Le's arm by tucking it next to his body, "which caused compression of his ulnar nerve."

Dr. Yong concluded that the breaches of the defendants were the proximate cause to Le's injuries, which included "serious ulnar nerve injury and neuropathy of Mr. Le's right arm and hand." He also concluded the injuries were foreseeable because, at the time of surgery, the causal connection between prolonged stretching

5

and compression of the ulnar nerve and long-term damage "was well known to orthopedic surgeons, anesthesiologist[s], physician assistants, nurses, and others in the medical community for decades."

Dr. Lee, K.L. Modern Spine, and Dr. Powell filed motions to dismiss the suit, arguing the report was insufficient based on Chapter 74 of the Texas Civil Practice and Remedies Code. The trial court denied the motions. Dr. Lee, K.L. Modern Spine, and Dr. Powell filed notices of interlocutory appeal.

## Standard of Review

An order denying a motion to dismiss a health care liability claim on the basis that the plaintiff has not filed an expert report is immediately appealable. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West Supp. 2018); *Lewis v. Funderburk*, 253 S.W.3d 204, 207–08 (Tex. 2008). On interlocutory appeal, we review the trial court's ruling for abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 513 (Tex. 2017).

## Analysis

A plaintiff asserting a health care liability claim must serve each defendant physician or health care provider with one or more expert reports and a curriculum

vitae of each expert whose opinion is offered to substantiate the merits of the claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (i) (West 2017); *TTHR Ltd. P'ship v. Moreno*, 401 S.W.3d 41, 42 (Tex. 2013). An expert report must provide: (1) "a fair summary of the expert's opinions . . . regarding applicable standards of care," (2) a statement identifying "the manner in which the care rendered by the physician or health care provider failed to meet the standards," and (3) an explanation of "the causal relationship between that failure and the injury, harm, or damages claimed." Civ. Prac. & Rem. § 74.351(r)(6); *see TTHR Ltd. P'ship*, 401 S.W.3d at 44. Although the expert report "need not marshal every bit of the plaintiff's evidence," *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006), it must "explain, to a reasonable degree, how and why the breach caused the injury based on the facts presented." *Jelinek v. Casas*, 328 S.W.3d 526, 539–40 (Tex. 2010).

Dr. Powell argues that Dr. Yong's report is insufficient because it contains fatal inconsistencies. *See Fung v. Fischer*, 365 S.W.3d 507, 531 (Tex. App.—Austin 2012, no pet.), *disapproved of on other grounds by Certified EMS, Inc. v. Potts*, 392 S.W.3d 625 (Tex. 2013).[2] Dr. Powell asserts that the inconsistency concerns

---

[2] For authority that inconsistencies can defeat a Chapter 74 expert report, *Fung* relies on *Wilson*. *See Fung v. Fischer*, 365 S.W.3d 507, 531 (Tex. App.—Austin 2012, no pet.), disapproved of on other grounds by *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625 (Tex. 2013) (citing *Wilson v. Shanti*, 333 S.W.3d 909, 914 (Tex. App.—Houston [1st Dist.] 2011, pet. denied)). *Wilson* concerned the admissibility of an expert witness at trial, not an expert report. 333 S.W.3d at 914. Because we

whether Le's injury could have been caused by ulnar nerve damage. In her attempt to establish inconsistency, however, Dr. Powell relies on records outside of the expert report. "In assessing the sufficiency of a report, a trial court . . . must exclusively rely upon the information contained within the four corners of the report." *Cornejo v. Hilgers*, 446 S.W.3d 113, 123 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). Because Dr. Powell relies on matters outside the expert report in support of its argument about internal inconsistencies, the argument fails. *See id.*

All of the appellants argue that the report fails because it states the same standard of care for all of the defendants. "There is nothing inherently impermissible about concluding that different health care providers owed the same standard of care to Sherman and breached that duty in the same way."[3] *Methodist Hosp. v. Shepherd-Sherman*, 296 S.W.3d 193, 199 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *accord Rittger v. Danos*, 332 S.W.3d 550, 556 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("Appellees are not required to specifically state the same standard of care for each individual physician practicing on the same patient when each physician owes the same duties to the patient.").

---

do not find its holding applicable to this case, we do not need to reach whether we adopt the reasoning of *Fung*.

[3] For the same reason, we reject Dr. Lee and K.L. Modern Spine's argument that the report is contradictory because it asserts that both Dr. Lee and Dr. Powell had a duty to position and monitor the positioning of the patient.

Dr. Lee and K.L. Modern Spine's reliance on *Taylor* is misplaced. *See Taylor v. Christus Spohn Health Sys. Corp.*, 169 S.W.3d 241, 245 (Tex. App.—Corpus Christi 2004, no pet.) (rejecting report that asserted defendants were negligent without explaining how and that asserted negligence was a proximate cause without explaining what defendants should have done); *see also Barber v. Dean*, 303 S.W.3d 819, 831 (Tex. App.—Fort Worth 2009, no pet.) ("*Taylor* has been thoroughly scrutinized by the appellate courts, and it does not expressly prohibit applying the same standard of care to more than one health care provider if they all owe the same duty to the patient.").

Their reliance on *Rittmer* is similarly misplaced. *See Rittmer v. Garza*, 65 S.W.3d 718, 723 (Tex. App.—Houston [14th Dist.] 2001, no pet.). As we have previously observed,

> The claims in *Rittmer* involved two separate surgical procedures performed by two different defendants—an oncologist performing a mastectomy and a plastic surgeon performing reconstructive surgery. *Rittmer*, 65 S.W.3d at 720. The expert report in *Rittmer* failed to articulate a specific standard of care applicable to each defendant, with respect to the performance of his particular surgical procedure and failed to causally link the conduct of each defendant to the plaintiff's injuries.

*Engh v. Reardon*, No. 01-09-00017-CV, 2010 WL 4484022, at *7 (Tex. App.—Houston [1st Dist.] Nov. 10, 2010, no pet.); *accord Rittger v. Danos*, 332 S.W.3d 550, 557 (Tex. App.—Houston [1st Dist.] 2009, no pet.). Here, we have a single surgery with all of the defendants present.

Similarly, Dr. Lee and K.L. Modern Spine argue that the report fails because it does not specify the standard of care required of *orthopedic surgeons* in documenting their operative reports or medical records. The report does assert that all of the defendants had duties to document in the medical records the positioning and repositioning of the arm during the surgery. This is sufficient. *See Shepherd-Sherman*, 296 S.W.3d at 199; *Rittger*, 332 S.W.3d at 556.

Dr. Lee and K.L. Modern Spine also argue that Dr. Yong failed to establish that he was qualified to opine on the standard of care required of orthopedic surgeons in documenting their operative reports or medical records. "In order to qualify as an expert in a particular case, a physician need not be a practitioner in the same specialty as the defendant physician." *Baylor College of Medicine v. Pokluda*, 283 S.W.3d 110, 118 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Instead, "the applicable 'standard of care' and an expert's ability to opine on it are dictated by the medical condition involved in the claim and by the expert's familiarity and experience with that condition." *Barber v. Dean*, 303 S.W.3d 819, 826 (Tex. App.—Fort Worth 2009, no pet.). Dr. Yong established that he had extensive experience with patients undergoing the type of procedure performed on Le, including serving as an anesthesiologist in hundreds of surgeries like Le's. He asserted that "[t]he orthopedic surgeon, anesthesiologist, physician assistant, and nurses have the responsibility for accurate and thorough documentation of the positioning and

10

padding of a patient before, during, and after the surgery." He also asserted that "[t]he standards of care discussed in my report are national standards of care." We hold this is sufficient. *Hood v. Kutcher*, No. 01-12-00363-CV, 2012 WL 4465357, at *6 (Tex. App.—Houston [1st Dist.] Sept. 27, 2012, no pet.) (mem. op.) (upholding expert report that determined failure to document procedure was breach of standard of care).

All of the appellants argue that, because the report provides a list of acts or omissions constituting breach of the duty of care and asserts Dr. Powell breached the standard of care by "one or more" of the listed items, the report does not properly inform him of the specific conduct called into question. *Am. Transitional Care Centers of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001) (holding "the report must inform the defendant of the specific conduct the plaintiff has called into question"). The report does assert that Le had a shoulder roll placed on his shoulder, that Le's arm was placed on an arm board, and that Le's arm was tucked next to his side. Dr. Yong asserted that, at the start of surgery, "a shoulder roll was placed under [Le's] shoulders and his neck was placed in a slight amount of extension." Dr. Yong asserted that the shoulder roll caused stretching of the ulnar nerve. Likewise, he asserted that the arm should have been placed at a sixty-degree angle from the body. Failure to properly place the arm caused compression of the ulnar nerve. We hold this is sufficient. *See Pokluda*, 283 S.W.3d at 121 (holding "a fair summary is

11

something less than a full statement of the applicable standard of care and how it was breached [and] need only set out what care was expected but not given").

Finally, Dr. Lee and K.L. Modern Spine argue the report is conclusory. They argue it is conclusory because it does not specify exactly how Le was positioned or who positioned him that way. An "expert report must represent only a good-faith effort to provide a fair summary of the expert's opinions." *Am. Transitional Care*, 46 S.W.3d at 878. It can be informal and "does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Id.* at 879. A "report does not require litigation-ready evidence." *Potts*, 392 S.W.3d at 630–31. Dr. Yong identified the best way to position an arm for surgery, described positions and ways of padding to be avoided, and critiqued the medical record's description of how Le's shoulders and arm were placed at the start of surgery. Detail greater than this is not required for an expert report. *See Baty v. Futrell*, 543 S.W.3d 689, 697 (Tex. 2018) (upholding as sufficient report determining doctor was supposed to avoid sticking optic nerve with needle and noting an alternative procedure after first inadequate attempt).

Dr. Lee and K.L. Modern Spine also critique the report for determining, "It is *likely* that during the surgical procedure Mr. Le's position shifted, changed, or moved due to physical contact, yet the medical records are silent on this issue or the steps taken to address it." (Emphasis added.) "Whether an expert's factual

inferences made in the expert report are accurate is a question for the fact finder and should not be considered when ruling on a section 74.351 motion to dismiss." *Hood*, 2012 WL 4465357, at *4 (citing *Gannon v. Wyche*, 321 S.W.3d 881, 892 (Tex. App.—Houston [14th Dist.] 2010, pet. denied)).

We overrule Dr. Lee and K.L. Modern Spine's first three issues, arguing that Dr. Yong was not qualified, that the report was conclusory as to breach, and that the report was conclusory as to causation. We also overrule Dr. Powell's first three issues, arguing that the report contains contradictory facts, that the report fails to establish a sufficient standard of care, and that the report fails to establish breach. Because it is not necessary for disposition of this appeal, we do not need to reach the appellants' fourth issues, arguing Dr. Yong should not be allowed more time to supplement his report. *See* TEX. R. APP. P. 47.1.

## Conclusion

We affirm the trial court's order.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Massengale.

13