

# NUMBER 13-13-00302-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**CHRISTUS SPOHN HEALTH
SYSTEM CORPORATION,**                                            **Appellant,**

**v.**

**JOSE CASTRO,**                                                  **Appellee.**

---

### On appeal from the 117th District Court
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Justice Rodriguez

Appellant Christus Spohn Health System Corporation (Spohn) challenges the trial

court's denial of its motion to dismiss appellee Jose Castro's health care liability claim.

*See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (West 2011). By two issues, Spohn

argues that: (1) Castro's experts were not qualified to opine on the specific area of health care involved in this suit; and (2) Castro's reports were contradictory and conclusory and were therefore "no reports" under the law. *See id.* § 74.351(*l*), (r)(6). We reverse and remand.

## I. Background

Castro alleged the following facts in his petition:

> On or about October 24, 2011, 50-year-old Jose Castro was in a serious car accident. He was a belted passenger in a Ford F-150 crew cab. The truck rolled and the roof crushed, causing severe injuries to Mr. Castro. Mr. Castro was transported via helicopter to the emergency room at Christus Spohn Hospital in critical condition. Mr. Castro sustained severe injuries including, but not limited to, fracture and dislocation of his cervical spine at C5-C6, multiple rib fractures, a collapsed lung, and damage to his right phrenic nerve. He remained in intensive care through most of December 2011. Mr. Castro had no sensation or movement below the nipple line, putting him at high risk of skin breakdown.
>
> In November 2011, Mr. Castro developed a pressure ulcer on his tail bone. The cause was the use of the tangible property, the hospital bed. By the time Mr. Castro was discharged from Christus Spohn Hospital in February 2012, the pressure ulcer had progressed to a grade III decubitus ulcer. . . .
>
> At all relevant times hereto, Mr. Castro was a patient of Christus Spohn Hospital.

Complaining of the pressure ulcer, in particular, Castro brought a health care liability claim against Spohn.[1] In that claim, Castro alleged that Spohn was negligent in: its use of the hospital bed; its failure to develop and employ policies to oversee patients like Castro; its failure to train and supervise personnel to carry out such policies; its failure

---

[1] In this same lawsuit, Castro has also alleged causes of action against the driver of the truck for negligence and against Ford Motor Company for products liability. Neither of those causes of action are before us in this accelerated, interlocutory appeal.

2

to render appropriate medical and nursing intervention to Castro; its failure to provide adequate nutritional support to Castro; its failure to plan for and protect Castro from bedsores and ulcers; its failure to follow Castro's doctors' orders; and its failure to maintain the highest practical level of care for Castro. Castro alleged that this negligence proximately caused the injuries he suffered at Spohn.

In support of his health care liability claim, Castro timely filed two expert reports—one authored by Donna du Bois, MPH, RN and another authored by Perry Starer, M.D. Both du Bois and Dr. Starer are geriatric specialists with extensive experience in caring for pressure ulcers in hospital and nursing home settings. Spohn objected to both expert reports, arguing that neither du Bois nor Dr. Starer was qualified to offer opinions as to the conditions under which Castro suffered his injuries, i.e., the development of a pressure ulcer in trauma care conditions while Castro was simultaneously suffering from quadriplegia, diabetes, bacterial infections, and respiratory distress. Spohn also filed motions to dismiss Castro's health care liability claim, arguing that Castro's reports are "no reports" and the claim should therefore be dismissed because neither du Bois nor Dr. Starer is qualified and the reports are contradictory and conclusory. After a hearing, the trial court denied Spohn's objections and motions to dismiss. This accelerated, interlocutory appeal followed. *See id.* § 51.014(a)(9) (West Supp. 2011).

## II. Standard of Review

We review a trial court's decision with respect to expert reports and the qualifications of experts for an abuse of discretion. *Larson v. Downing*, 197 S.W.3d 303,

3

304–05 (Tex. 2006); *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 876 (Tex. 2001). The trial court abuses its discretion if it acts unreasonably or arbitrarily or without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003).

### III. Applicable Law

Under Chapter 74, an expert report is defined as:

a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). When a document purporting to be an expert report is timely served and is properly challenged, as is the case here, the trial court "shall grant [the] motion challenging the adequacy of [the] report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." *Id.* § 74.351(*l*); *see Loaisiga v. Cerda*, 379 S.W.3d 248, 260 (Tex. 2012). To qualify as an objective good faith effort, the report must (1) inform the defendant of the specific conduct the plaintiff complains of, and (2) provide a basis for the trial court to conclude that the plaintiff's claims have merit. *Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011) (citing *Palacios*, 46 S.W.3d at 879). The report and/or its accompanying curriculum vitae (CV) must also establish that the report's author is qualified to opine as an expert on the subject matter of the report. *Leland v. Brandal*, 217 S.W.3d 60, 62 (Tex. App.—San Antonio 2006), *aff'd on other grounds*, 257 S.W.3d 204 (Tex. 2008). Those qualifications

4

must appear within the four corners of the expert report and cannot be inferred. *Id.*; *see also Palacios*, 46 S.W.3d at 878; *Baylor Coll. of Med. v. Pokluda*, 283 S.W.3d 110, 117 (Tex. App.—Houston [14th Dist.] 2009, no pet.). To meet the "good faith effort" requirement, "[n]o particular words or formality are required, but bare conclusions will not suffice. The report must address all the elements, and omissions may not be supplied by inference." *Scoresby*, 346 S.W.3d at 556 (citations omitted). "The purpose of the expert report requirement is to deter frivolous claims, not to dispose of claims regardless of their merits." *Id.* at 554 (citation omitted).

A report meets the minimum qualifications for an expert report under the statute "if it contains the opinion of an individual with expertise that the claim has merit, and if the defendant's conduct is implicated." *Id.* at 557. If a report meets these qualifications but is deficient, the claimant is entitled to one thirty-day extension to cure the deficiencies. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c). "All deficiencies, whether in the expert's opinions or qualifications, are subject to being cured before an appeal may be taken from the trial court's refusal to dismiss the case." *Scoresby*, 346 S.W.3d at 557; *see also Leland*, 257 S.W.3d at 207–08 (holding that when elements of a timely filed expert report are found deficient, either by the trial court or on appeal, one thirty-day extension to cure the report may be granted).

## IV. Qualifications of Experts

By its first issue, Spohn contends that because the care provided to Castro by the hospital was under intensive care unit (ICU) or trauma conditions, his development of pressure ulcers must be addressed in the context of those conditions. And because

5

neither du Bois nor Dr. Starer practice in the field of ICU/trauma care, Spohn argues that they are not qualified to author expert reports in this case.

To be qualified to provide opinion testimony on whether a health care provider departed from the accepted standard of care, an expert must satisfy section 74.402. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(B). Section 74.402 lists three specific qualifications an expert witness must possess to provide opinion testimony on how a health care provider departed from accepted standards of health care—the expert must:

> (1)  [be] practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;
>
> (2)  [have] knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
>
> (3)  [be] qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

*Id.* § 74.402(b) (West 2011).

A plaintiff offering expert medical testimony must establish that the report's author has expertise regarding "the specific issue before the court which would qualify the expert to give an opinion on that particular subject." *Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996). Our analysis of the proffered expert's qualifications focuses on "the very matter" on which the expert is to give an opinion. *Id.*

Here, du Bois's CV shows that she has over thirty years' experience as a nurse, primarily in the field of nursing home care and other long-term facility care. In her report,

du Bois stated that she is familiar with the standard of care for the "prevention of pressure ulcers . . . expected by ordinary prudent nurses in Texas."  In his report, Dr. Starer states that he is "a practicing physician licensed by the State of New York."  Dr. Starer states that he has been "board certified in Internal Medicine and Geriatrics" since 1985.  Dr. Starer states that he teaches in the field of geriatrics at Mount Sinai School of Medicine and has given lectures on the prevention and treatment of pressure ulcers to both physicians and nurses.  Finally, Dr. Starer states:

> In the regular course of my medical practice, I have occasion to diagnose and treat patients with conditions substantially similar to or identical with those of Jose Castro, including mobility limitations.  I have also served as a primary care physician for hospital and nursing home patients since 1985.  Over the course of my career, I have been the primary care physician for more than 5,000 patients in hospitals and nursing homes.  Many of those patients have struggled with disabilities similar to those Jose Castro experienced.  Accordingly, I have cared for and treated numerous patients who, like Jose Castro, were at risk for development of pressure ulcers.

In their reports and CVs, neither du Bois nor Dr. Starer states that they have experience preventing and treating bedsores in the context of ICU or trauma care or explains how their fields of practice involve the same type of ICU/trauma care Spohn provided to Castro.

Spohn does not dispute that du Bois is an expert in the field of nursing home care and Dr. Starer is an expert in the field of geriatrics and nursing home care, or that these fields regularly involve the prevention and treatment of pressure ulcers.  Rather, Spohn argues that neither expert is practicing or has otherwise relevant experience in ICU/trauma care, which is the relevant field of practice in this case.  We agree.  In his petition, Castro alleges that he remained in Spohn's trauma unit and ICU from October

7

24, 2011 through most of December 2011 as a result of the severe injuries he sustained in the car accident, including a collapsed lung, multiple broken ribs, and a fractured and dislocated spine. In their descriptions of Castro's conditions, both du Bois and Dr. Starer acknowledge these serious injuries and that Castro was being cared for under intensive care or trauma conditions. Castro then alleges that his pressure ulcer developed in November 2011, which is while he was in the ICU. In short, under the facts alleged in his own petition, it is clear that the care provided to Castro by Spohn was trauma and ICU care. Castro's pressure ulcer developed in this context, and his experts must be qualified to opine on his injury in the context of these conditions. Examining only what is within the four-corners of the experts' reports and CVs, *see Palacios*, 46 S.W.3d at 878; *Pokluda*, 283 S.W.3d at 117, we find nothing in either du Bois or Dr. Starer's reports that meets this requirement.

Castro argues that Spohn's characterization of the relevant field of practice in this case sets the bar too high, that Spohn is essentially requiring Castro to find a specialist in the treatment of "a 50-year-old quadriplegic with diabetes, PEG tube feeding, with a tracheostomy [sic] and neurologic deficits, with prior cardiac arrest and suffering from bacterial infections." This characterization overstates what is required in this case. Although it is true that an expert need not be a practitioner in the same specialty as the defendant to qualify as an expert, *see Broders*, 924 S.W.2d at 153, he or she is only competent if he or she has practical knowledge of what is usually and customarily done by a practitioner under circumstances similar to those confronting the defendant. *See Ehrlich v. Miles*, 144 S.W.3d 620, 625 (Tex. App.—Fort Worth 2004, pet. denied). In

8

other words, the proper inquiry in assessing an expert's qualifications to submit a report is not his or her area of expertise but his or her familiarity with the specific issues involved in the claim before the court. *See Blan v. Ali*, 7 S.W.3d 741, 746 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *see also Broders*, 924 S.W.2d at 153. Here, as discussed above, Castro's petition includes facts showing that the circumstances under which he developed his pressure ulcer involved trauma and ICU treatment of his severe injuries following the accident. His expert must be qualified to render an opinion on the applicable standard of care in those circumstances—i.e., the prevention and/or treatment of pressure ulcers in the context of ICU/trauma care.[2] We are not persuaded by Castro's argument to the contrary.

While "[t]he qualification of a witness as an expert is [a matter] within the trial court's discretion," *Larson*, 197 S.W.3d at 304 (citing *Broders*, 924 S.W.2d at 151), such discretion is not without limits. *See Walker*, 111 S.W.3d at 62 (holding that a court abuses its discretion if it acts without reference to guiding rules and principles). Castro was required to submit reports authored by experts who are "practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider," have "knowledge of accepted standards of care . . . for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim," and are "qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care." *See* TEX. CIV. PRAC. & REM. CODE

---

[2] We note that neither du Bois nor Dr. Starer's reports foreclose the possibility that they are qualified in this case and may need only to connect the experience they have gained in their thirty-plus year careers to the conditions in this case. *See infra* sections V, VI (remanding for entry of an order granting Castro a thirty-day extension to amend his reports). During his thirty-day extension, *see id.*, Castro is also entitled to serve the reports of additional experts. *See In re Buster*, 275 S.W.3d 475, 477 (Tex. 2008).

ANN. § 74.402(b). Focusing on the specific issue before the trial court as alleged in Castro's petition, *see Broders*, 924 S.W.2d at 153, we cannot conclude that the information provided in du Bois and Dr. Starer's reports show them to be practicing in the relevant field of practice or show them to have any other relevant experience giving them knowledge of the standard of care for the specific conditions in this case. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b); *Blan*, 7 S.W.3d at 746. As such, the trial court did not follow guiding rules and principles in denying Spohn's objections to the expert's qualifications and motion to dismiss on this basis. Spohn's first issue is sustained.

## IV. Sufficiency of Report

By its second issue, Spohn argues that Castro's reports were contradictory and conclusory and are therefore "no report" under the statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *Scoresby*, 346 S.W.3d at 551–52.

First, Spohn argues that because du Bois and Dr. Starer identified different conduct as breaches of the standard of care, their reports, taken together, are inherently inconsistent. *See Fung v. Fischer*, 365 S.W.3d 507, 530 (Tex. App.—Austin 2012), *overruled on other grounds*, *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625 (Tex. 2013) ("Reliable expert opinion should . . . be free from internal inconsistencies."). Spohn contends that du Bois identified only two breaches in her report: that the nurses caring for Castro failed to make accurate records and failed to create an appropriate treatment plan for the prevention of pressure ulcers. Spohn contends that Dr. Starer likewise identified only two breaches of care in his report: the nurses' failure to correctly use Castro's bed and failure to turn Castro more frequently. In our review of du Bois's report,

10

we found that she also identified as breaches of the standard of care that the nurses caring for Castro failed to reposition Castro as needed, failed to assess his skin after each turn, and failed to properly assess and provide for Castro's nutritional needs. And again, in our review of Dr. Starer's report, we found that he also identified as breaches of the standard of care that the Spohn staff caring for Castro "failed to properly develop a care plan for ulcer prevention" and "failed to maintain an accurate and complete clinical record." In light of the full range of conduct identified by du Bois and Dr. Starer, we disagree with Spohn that the breaches identified in the separate reports are contradictory; for that matter, having examined the reports in their entirety, we note that du Bois and Dr. Starer identified largely the same breaches.

But assuming for the sake of argument that the breaches in the reports are limited to those identified by Spohn, we believe that Dr. Starer's report identified additional instances of conduct that breached the standard of care. Read together in the manner in which they are characterized by Spohn, the reports are not contradictory, but provide a more complete picture of the instances of conduct giving rise to Castro's claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(i) ("Nothing in this section shall be construed to mean that a single expert must address all liability and causation issues with respect to all physicians or health care providers or with respect to both liability and causation issues for a physician or health care provider."). Thus, we are not persuaded by Spohn's argument in this regard, and the trial court did not abuse its discretion in denying Spohn's motion to dismiss on this basis. Spohn's second issue is overruled in so far as it depends on this argument.

Spohn next argues that du Bois's report, in particular, did no more than "state that nurses failed to keep accurate records or to implement appropriate plans of care." Spohn argues that du Bois was required to "state what documentation was inaccurate, what documentation was lacking, on what dates it was wrong or missing and who was responsible for that charting." But du Bois's report includes the exact elements that Spohn claims are required. Du Bois refers to specific medical record dates and page numbers throughout her report and specifically identifies what she characterizes as the deficiencies in those records. Where du Bois points out that certain details are missing from the records, she does not specify page numbers, but as she is pointing to the absence of something, we cannot fault her for failing to specify where that missing detail is *not* located. In short, we are not persuaded by Spohn's generalized assertions in this regard. Again, Spohn's second issue is overruled in so far as it depends on this argument.

Finally, Spohn argues that the reports do not adequately establish causation because they do not "explain how taking any particular action would have prevented the development of a pressure ulcer given the complex medical issues involved in [Castro]'s care." Spohn argues that "[w]ithout addressing [these] critical issues, it is impossible to know if [Castro]'s pressure ulcer could have been prevented." On this account, we agree with Spohn. Although du Bois and Dr. Starer's reports go into great detail about the procedures necessary to prevent pressure ulcers in standard conditions, they do not address the specific conditions present in Castro's care. As discussed in detail above, Castro's claim involves his development of a pressure ulcer while he was being treated in

12

Spohn's ICU over the course of several months for severe injuries he suffered in an automobile accident. Neither du Bois nor Dr. Starer discusses Castro's injuries in the context of these conditions. And the omission of this context renders any conclusion on the cause of Castro's injuries incomplete. Because Castro's reports do not adequately address the causation element, they did not provide a basis for the trial court to conclude that Castro's claims have merit. *See Palacios*, 46 S.W.3d at 879. The reports therefore do not amount to a good faith effort to comply with the statute and are deficient. *See Scoresby*, 346 S.W.3d at 556 (requiring that the report adequately address all the elements to qualify as a good-faith effort). The trial court abused its discretion in denying Spohn's objections and motions to dismiss on this basis. *See Walker*, 111 S.W.3d at 62. Spohn's second issue is sustained as to its causation argument.

## V. Thirty-Day Extension

Although Castro's expert reports are deficient in that they do not establish the authors' qualifications and do not adequately address causation, we do not believe the reports are fatally deficient, or "no report" under the statute. Both meet the minimum qualifications set out in *Scoresby*—both du Bois and Dr. Starer are individuals with expertise who opine about Castro's injuries in great detail and implicate the conduct of Spohn's staff. *See* 346 S.W.3d at 557. Because Castro met these minimum qualifications, he is entitled to one thirty-day extension to cure the deficiencies in his reports. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c); *see also Scoresby*, 346 S.W.3d at 557 (holding that all deficiencies, whether in an expert's opinion or qualifications, are subject to being cured). This disposition is consistent with the goal of

13

the statute, which is to deter frivolous claims but not dispose of claims regardless of their merits. *See Scoresby*, 346 S.W.3d at 554.

## VI. Conclusion

We reverse the order of the trial court denying Spohn's motion to dismiss and remand for entry of an order granting Castro a thirty-day extension to amend his expert reports. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c).

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 12th
day of December, 2013.

14