*Court of Appeals*
*Fourth Court of Appeals District of Texas*




# OPINION

No. 04-09-00463-CV

Mauricio **MARTINEZ-PARTIDO**,
Appellant

v.

**METHODIST SPECIALTY AND TRANSPLANT HOSPITAL**; Methodist Healthcare
System of San Antonio. Ltd., L.L.P. d/b/a Methodist Specialty and Transplant Hospital; Jane or
John Doe(s), Hospital Employee(s); and Jane or John Doe(s), Hospital Nurse(s),
Appellees

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2005-CI-07266
Honorable Janet P. Littlejohn, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:       Sandee Bryan Marion, Justice
               Phylis J. Speedlin, Justice
               Marialyn Barnard, Justice

Delivered and Filed:  July 21, 2010

REVERSED AND REMANDED

This is an appeal from the trial court's dismissal of appellant's medical malpractice claim

against appellees.  The dismissal is based on appellees' objections to the qualifications of

appellant's experts.  We reverse and remand.

**BACKGROUND**

In January 2000, appellant had an AMS 800 Artificial Urinary Sphincter implanted. Appellant underwent another surgery, in February 2003, at Methodist Specialty and Transplant Hospital ("Methodist") to add an additional constricting sleeve or "cuff" to the device to alleviate leakage. A follow-up procedure on April 4, 2003, also at Methodist, was performed to reposition one of the AMS 800 components. Six weeks later, appellant went to Methodist's emergency room complaining of urinary retention. When appellant, a Spanish-speaking male, arrived at Methodist, he presented to the emergency room personnel a medical information card that informs healthcare providers that the patient has an AMS 800 implanted and cautions healthcare providers to deactivate the device prior to urethral catheterization. Despite noting the AMS 800 in admission paperwork, despite presenting the medical card to emergency room personnel, and despite having been a surgical patient at Methodist six weeks earlier, several attempts were made, the last of which was successful, to "push" a catheter through appellant's activated AMS 800.

Appellant filed suit against Methodist, two doctors, and "Jane or John Doe" hospital employees and nurses.[1] Appellant alleged he suffered personal injuries because appellees catheterized him without first de-activating his artificial urinary sphincter. Appellant timely filed two expert reports: that of Paul M. Adler, D.O. and that of Emily Benefield, R.N. Appellees' motion to dismiss the suit, based on objections to both reports, was denied by the trial court. Following an interlocutory appeal, this court reversed the trial court and found that Dr. Adler was not qualified to render an opinion on causation and Ms. Benefield was not qualified to render an opinion on the standard of care. *See Methodist Healthcare Sys. of San Antonio, L.L.P. v. Martinez-Partido*, 268 S.W.3d 73, 78 (Tex. App.—San Antonio 2006). The Texas Supreme

---

[1] The doctors are no longer parties to the suit.

Court vacated our judgment and remanded to the trial court, concluding appellant was entitled to have the trial court decide whether he should receive an extension of time in which to file a new expert report. *See Martinez-Partido v. Methodist Healthcare Sys. of San Antonio, L.L.P.*, 267 S.W.3d 881, 882 (Tex. 2008) (per curiam). Upon remand, the trial court granted appellant a thirty-day extension in which "to cure deficiencies in [appellant's] expert reports." Appellant timely filed a new report from Dr. Adler and a report from a urologist, Bruce B. Garber, M.D. Appellees filed new objections to both reports and a motion to dismiss, which the trial court granted. This appeal ensued.

## APPELLEES' OBJECTIONS TO REVISED REPORTS

In his initial report, Dr. Adler offered his opinion on causation. In his revised report, he does not offer a causation opinion, but instead, offers his opinion on the appropriate standard of care and the breach of that standard. On appeal, appellant first argues that because appellees objected to Dr. Adler's qualifications when Dr. Adler's initial report was first filed, appellees may not do so again, but instead, must stand on those prior objections. Our resolution of this issue requires an interpretation of section 74.351 of the Texas Medical Liability and Improvement Act ("MLIA"). Section 74.351 provides that "[i]f an expert report has not been [timely] served because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c) (Vernon Supp. 2010). Section 74.351 also provides that "[e]ach defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived." *Id.* § 74.351(a).

When interpreting statutes, courts should ascertain and give effect to the Legislature's intent as expressed by the language of the statute. *See* TEX. GOV'T CODE ANN. § 312.005 (Vernon 2005); *see also Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 383 (Tex. 2000). We give effect to legislative intent as it is expressed by the plain meaning of words used in the statute unless the context necessarily requires a different construction, a different construction is expressly provided by statute, or such an interpretation would lead to absurd or nonsensical results. *See Hernandez v. Ebrom*, 289 S.W.3d 316, 321 (Tex. 2009); *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999). A court may not judicially amend a statute and add words that are not implicitly contained in the language of the statute. *Jones v. Liberty Mut. Ins. Co.*, 745 S.W.2d 901, 902 (Tex. 1988). Thus, we also must examine the Legislature's words in the context of the statute as a whole and not consider words or parts of the statute in isolation. *Harris County Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009).

"When the Legislature has prescribed certain time limits and procedures, it is not our prerogative to add further limitations to them." *Hernandez*, 289 S.W.3d at 321. Here, section 74.351 limits a claimant's opportunity to cure a deficient report to "one thirty-day extension." TEX. CIV. PRAC. & REM. CODE § 74.351(c). The only limitation placed on objections is a time limit: the objections must be filed no later than the twenty-first day after the date the report was served. *Id.* § 74.351(a). If the Legislature had intended to otherwise limit objections, it would have done so. *See e.g.*, TEX. GOV'T CODE ANN. § 74.053(b) (Vernon 2005) ("If a party to a civil case files a timely objection to the assignment, the judge shall not hear the case. Except as provided by Subsection (d), each party to the case is only entitled to one objection under this section for that case."). We therefore hold that when, as here, a revised report is submitted in which an expert opines on a new "matter," objections to the expert's report with respect to that

new "matter" may be raised. Accordingly, the trial court did not err in considering appellees'

objections to Dr. Adler's revised report.

## OBJECTIONS TO EXPERT QUALIFICATIONS

Appellant next asserts the trial court erred in sustaining the merits of the appellees'

objections to the qualifications of Dr. Adler and Dr. Garber. Dr. Adler opined on standard of

care and breach, while Dr. Garber opined on causation.[2]

A person may qualify as an expert witness on the issue of whether a health care provider
departed from accepted standards of care only if the person:

> (1) is practicing health care in a field of practice that involves the same type of
> care or treatment as that delivered by the defendant health care provider, if the
> defendant health care provider is an individual, at the time the testimony is given
> or was practicing that type of health care at the time the claim arose;
> (2) has knowledge of accepted standards of care for health care providers for the
> diagnosis, care, or treatment of the illness, injury, or condition involved in the
> claim; and
> (3) is qualified on the basis of training or experience to offer an expert opinion
> regarding those accepted standards of health care.

TEX. CIV. PRAC. & REM. CODE § 74.402(b).

In determining whether a person is qualified on the basis of training or experience, the

court shall consider whether, at the time the claim arose or at the time the testimony is given, the

person:

> (1) is certified by a licensing agency of one or more states of the United States or
> a national professional certifying agency, or has other substantial training or
> experience, in the area of health care relevant to the claim; and
>
> (2) is actively practicing health care in rendering health care services relevant to
> the claim.

*Id.* § 74.402(c).

---

[2] On appeal, appellees no longer object to Dr. Garber's qualifications to opine on causation.

**A.      Objections to Dr. Adler**

A plaintiff offering expert medical testimony must establish that the expert has expertise regarding "the specific issue before the court which would qualify the expert to give an opinion on that particular subject." *Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996).  The analysis focuses on "the very matter" on which the expert is to give an opinion. *Id.*  Here, appellees objected that Dr. Adler was not qualified to opine on the standard of care and alleged breach of the standard of care.  More specifically, appellees asserted Dr. Adler was not qualified in emergency medical care because he was not and is not certified by a licensing agency, nor does he have other substantial training or experience in an area of medical practice relevant to the claim, and he is not actively practicing medicine/health care in rendering medical care services relevant to the claim.  Appellees also asserted Dr. Adler is not qualified to set forth the emergency department nursing standard of care or alleged breaches of that standard of care.

There is no dispute that, prior to this 2003 claim, Dr. Adler practiced in emergency medicine.  However, his curriculum vitae indicates his American Board of Emergency Medicine certification went inactive in 2001 and he has not yet been re-certified.  Therefore, he is not "certified by a licensing agency of one or more states of the United States or a national professional certifying agency. . . ." TEX. CIV. PRAC. & REM. CODE § 74.402(c)(1).  But section 74.402(c)(1) is phrased in the disjunctive, therefore, we may also consider whether Dr. Adler "has other substantial training or experience, in the area of health care relevant to the claim." *Id.* § 74.402(c)(1).  Finally, we also must determine whether Dr. Adler "is actively practicing health care in rendering health care services relevant to the claim." *Id.* § 74.402(c)(2).  We begin our analysis of whether Dr. Adler met the statutory requirements by first ascertaining the "matter" upon which he offered his opinion.

**B.      Focus of Dr. Adler's Report**

Dr. Adler's opinions do not focus on the medical treatment appellant received or should have received.  Instead, Dr. Adler focuses on a break-down in communications that led to the failure to deactivate the AMS 800 before trying to insert a catheter.  Dr. Adler's report begins with an extensive explanation of the device implanted into appellant for the purpose of providing him with some control over his urinary incontinence.  He also notes appellant was an elderly Spanish-speaking male, and appellees did not provide a mechanism for effective communication between healthcare providers and patients with limited or no English proficiency.  Appellant's medical records indicate that he gave the emergency room personnel a medical information card that alerts health care providers that the patient has the AMS 800 and cautions health care providers to deactivate the device prior to urethral catherization.  Despite having the card and despite having been a patient at Methodist six weeks earlier, emergency room personnel "ram[med] a catheter through [appellant's] activated (constricted)" device causing significant blood and urine discharge.  Only after this was a staff urologist called and he disabled the device.

Dr. Adler's opinion then turns to the applicable standard of care and breach of the standard of care.  As to the standard of care owed by the defendant-hospital and the breach of the standard of care, he focuses on the need to ensure the availability of a mechanism for effective communication between healthcare providers and patients with limited or no English proficiency.  As to the standard of care owed by the nursing staff and the breach of the standard of care, he focuses on the need to ascertain a proper course of medical treatment and/or medical consultation in light of any patient-specific medical information cards, communications with the patient, and the patient's available medical history.  Finally, as to the standard of care owed by the non-physician, non-nursing staff and the breach of the standard of care, he focuses on the

need to forward to and/or alert the appropriate health care providers, nurses, and/or physicians about patient-specific medical information, in this case, the appellant's medical information card. With the subject-matter of Dr. Adler's opinion in mind, we next address his expertise relative to this "matter."

## C.      Dr. Adler's Qualifications

Appellees argue that none of the positions held by Dr. Adler concerned emergency room care and that he failed to show he was actively practicing health care in rendering treatment in an emergency room to a patient who had an artificial urinary sphincter. Appellees also contend that because Dr. Adler is not a trained or licensed nurse, he is not qualified to render an opinion on the standard of nursing care.

Different standards of care apply to physicians and health care providers. *See Simonson v. Keppard*, 225 S.W.3d 868, 872 (Tex. App.—Dallas 2007, no pet.). If a physician states he is familiar with the standard of care and responsibilities and requirements for healthcare providers, and he has worked with, interacted with, and supervised healthcare providers, the physician is qualified on the issue of whether the health care providers departed from the accepted standards of care for health care providers. *See San Jacinto Methodist Hosp. v. Bennett*, 256 S.W.3d 806, 814 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (distinguishing *Simonson* on ground that expert specifically stated, "I am familiar with the standard of care for both nurses and physicians for the prevention and treatment of decubitus ulcers."); *Kelly Ryan Cook, P.A. v. Spears*, 275 S.W.3d 577, 582-84 (Tex. App.—Dallas 2008, no pet.) (distinguishing *Simonson* on ground that expert specifically stated, "I am familiar with the standards of care anywhere in the United States for arthroscopic knee surgery, and the practices, procedures and protocols on the part of a physician, a physician assistant acting as a surgical assistant, anesthesiologist, and a

hospital/surgical center. There is no difference in the applicable standards of care for Frisco, Texas, as opposed to the same practices in other areas of Texas, New Jersey, California, or anywhere else in the United States . . . I am very familiar with the standard of medical care for physicians, [and] physician assistants acting as a surgical assistant . . . concerning the diagnosis, treatment, and arthroscopic knee surgery of patients.").

At the time the claim arose and at the time the testimony was given, Dr. Adler served as Medical Director at Summit Park Hospital, Summit Park Nursing Care Center and Alzheimer's Facility, Rockland County Jail, and Rockland County New York's Department of Public Health. He is the former Chairman and Residency Director in the Department of Emergency Medicine at Cornell Medical School at Brooklyn Hospital Center in Brooklyn, New York. And, from 1991 through 2002, he was an attending physician in the emergency department at Brooklyn Hospital Center. In the introduction to his expert report, Dr. Adler states as follows:

> I am and have been a licensed and actively practicing physician since 1977, with a particular emphasis in emergency health care. In a number of my positions throughout my career as a physician, I have been responsible for overseeing and supervising all personnel, including medical, non-medical, and nursing personnel, and all aspects of emergency room operations in a variety of hospital and clinical settings. My training and education, coupled with my experience in these positions, have provided me with personal, first-hand knowledge of the standards of care for all personnel involved in emergency room health care treatment, which is applicable to all emergency room treatment facilities throughout the United States. As a medical director of numerous medical facilities, I am also very familiar with the standard of care owed all patients by the medical facility itself, which can include, but is not limited to, proper documentation of patient treatment and provision of translation services for patients with limited or no English proficiency. Finally, I am generally familiar, through both my training, experience, and review of medical literature, with the AMS 800 Artificial Urinary Sphincter, its usage, and its functionality. . . . .

We conclude Dr. Adler's training and experience as an emergency department physician and his extensive administrative experience qualifies him to opine about the standard of care or breach of that standard in this case. The need to properly communicate a patient's medical

history crosses all disciplines and medical settings, and Dr. Adler's experience as medical director at numerous medical facilities more than qualifies him to opine on what hospitals and hospital personnel should do to ensure a patient's medical history is properly communicated. Therefore, the trial court erred in sustaining the objections to Dr. Adler's report.[3]

## CONCLUSION

We reverse the trial court's judgment and remand for further proceedings.

Sandee Bryan Marion, Justice

---

[3] Because we conclude the trial court erred in sustaining appellees' objections to the expert reports, we do not address appellant's open court, separation of powers, and due process complaints. We also need not address appellant's complaint that the trial court erred in sustaining appellees' objections to two exhibits attached to Dr. Adler's report.