

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00329-CV

**SAVASENIORCARE ADMINISTRATIVE SERVICES, L.L.C.**, SSC Rio Grande City
Operating Company, L.P., and Mark Anthony West,
Appellants

v.

Elias **CANTU**, Jr., Hector Cantu, Mary Cantu, Cynthia Cantu, Leticia Cantu, Emilio Cantu, and
Ivar Cantu, Individually and as the Heirs of Maria Maldonado Cantu, Decedent,
Appellees

From the 381st Judicial District Court, Starr County, Texas
Trial Court No. DC-13-669
Honorable Jose Luis Garza, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:       Catherine Stone, Chief Justice
               Karen Angelini, Justice
               Rebeca C. Martinez, Justice

Delivered and Filed:  October 22, 2014

REVERSED AND REMANDED

This is an interlocutory appeal from an order overruling objections to an expert report and denying a motion to dismiss healthcare liability claims against a nursing facility and one of its employees. We conclude the trial court abused its discretion in overruling objections to the expert report, and reverse and remand to the trial court for further proceedings.

## BACKGROUND

Maria Maldonado Cantu died while she was a patient at Retama Manor Nursing Center in Rio Grande City, Texas. Retama Manor is owned by Savaseniorcare Administrative Services, L.L.C., and operated by SSC Rio Grande City Operating Company, L.P. After her death, Maria's family and her estate (collectively, "the Cantus") filed a lawsuit against Savaseniorcare Administrative Services, L.L.C., SSC Rio Grande City Operating Company, L.P., and Mark Anthony West (collectively, "Retama Manor"). West was employed by Retama Manor.

In their lawsuit, the Cantus alleged that, on the day before her death, Maria was dropped by West while being transferred to her bed after a physical therapy session. The Cantus further alleged that Maria complained of chest pain and nervousness immediately after the fall, and continued to complain of chest pain and nervousness the following day. According to the Cantus' petition, Retama Manor "was negligent for failing to timely communicate [Maria's] signs and symptoms suggestive of heart pain and serious risks of death" and "for failing to attend to Maria."

The Cantus served a single expert report. Retama Manor filed objections to the expert report and a motion to dismiss. Retama Manor argued that the expert report failed to comply with Chapter 74 of the Texas Civil Practice and Remedies Code because (1) the Cantus failed to demonstrate that their expert, Dr. Jose Federico Vallejo-Manzur, was qualified to give an opinion concerning the applicable standards of care; and (2) the report failed to provide a fair summary of his opinions concerning the standards of care, any breach, or causation. After a hearing, the trial court overruled the objections to the expert report and denied the motion to dismiss. Retama Manor appealed.

## STANDARD OF REVIEW

We review a trial court's ruling concerning an expert report under section 74.351 of the Texas Civil Practice and Remedies Code for an abuse of discretion. *Bowie Mem'l Hosp. v. Wright*,

79 S.W.3d 48, 52 (Tex. 2002); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). A trial court abuses its discretion when it acts arbitrarily or unreasonably and without reference to any guiding rules and principles. *Bowie*, 79 S.W.3d at 52.

### EXPERT REPORT REQUIREMENTS

A healthcare liability claimant must serve an expert report on each defendant no later than the 120th day after the defendant's answer is filed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West Supp. 2014). A health care provider whose conduct is implicated in a report may file and serve objections to the sufficiency of the report. *Id.* An expert report is a written report that provides a fair summary of the expert's opinions regarding applicable standards of care, the manner in which the defendant failed to meet those standards, and the causal relationship between the defendant's failure and the plaintiff's injury, harm, or damages claimed. *Id.* § 74.351(r)(6). If an expert report has not been timely served, the court, on the motion of the affected health care provider, shall enter an order that dismisses the claim with respect to the health care provider with prejudice. *Id.* § 74.351(b)(2). However, if an expert report is not timely served because elements of that report are found to be deficient, the court may grant one thirty-day extension to cure the deficiency. *Id.* § 74.351(c).

### DISCUSSION

In one issue, Retama Manor argues the trial court abused its discretion in overruling its objections to the expert report and in denying its motion to dismiss the Cantus' claims. "[A]n expert report must discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the specific conduct the plaintiff has called into question and to provide a basis for the trial court to conclude the claims have merit." *Palacios*, 46 S.W.3d at 875. "A report need not marshal all the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in the statute." *Palacios*, 46 S.W.3d at 878. A report that merely states the

expert's conclusions about the standard of care, breach, and causation does not inform the defendant of the specific conduct the plaintiff has called into question and provide a basis for the trial court to conclude the claims have merit. *Id*. at 879. In the report, the expert must explain the basis of his statements to link his conclusions to the facts. *Bowie*, 79 S.W.3d at 52.

### *Qualifications to Render an Expert Opinion on Standard of Care*

Retama Manor argues the trial court should have sustained its objection to Dr. Vallejo-Manzur's qualifications. According to Retama Manor, the report and curriculum vitae fail to demonstrate that Dr. Vallejo-Manzur qualifies as an expert witness capable of opining as to the standard of care applicable to a skilled nursing facility and its employees, especially a physical therapist like West.

For an expert report to satisfy section 74.351, the author of the report must be qualified to render the opinions made in the report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5). The author's qualifications must appear in his report or curriculum vitae and cannot be inferred. *Baylor College of Medicine v. Pokluda*, 283 S.W.3d 110, 117 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

A person may qualify as an expert witness on the issue of whether a health care provider departed from accepted standards of care only if the person:

> (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;
>
> (2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
>
> (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b) (West 2011). In determining whether a witness is qualified on the basis of training and experience, courts consider whether, at the time the claim arose or at the time the testimony is given, the witness (1) is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim; and (2) is actively practicing health care in rendering health care services relevant to the claim. *Id*. § 74.402(c). "Practicing health care" includes training health care providers in the same field as the defendant health care provider at an accredited educational institution or serving as a consulting health care provider and being licensed, certified, or registered in the same field as the defendant health care provider. *Id*. § 74.402(a).

A plaintiff offering medical testimony must establish that the expert has expertise regarding "the specific issue before the court which would qualify the expert to give an opinion on that particular subject." *Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996); *Martinez-Partido v. Methodist Specialty & Transplant Hosp*., 327 S.W.3d 274, 278 (Tex. App.—San Antonio 2010, no pet.). The analysis focuses on "the very matter" on which the expert is to give an opinion. *Broders*, 924 S.W.2d at 153; *Martinez-Partido*, 327 S.W.3d at 278.

In this case, the expert's opinions focused on the care and treatment Maria received or should have received from the nursing and physical therapy staff at Retama Manor. Dr. Vallejo-Manzur opined in his report that Retama Manor employees were negligent "in the handling and dropping of Maria" and "in not reporting the incident or following proper protocol" after the incident.

Dr. Vallejo-Manzur's report and curriculum vitae state that he is currently employed by the Valley Pulmonary Group, which concentrates on pulmonary, critical care, and sleep medicine and that he is board certified in internal medicine, pulmonary medicine, critical care medicine, and

sleep medicine. The report and curriculum vitae further state that Dr. Vallejo-Manzur graduated from the Universidad Autonoma de Tamaulipas Medical School, was a resident in the internal medical departments of Maryland General Hospital and UMASS Memorial Medical Center, and received a fellowship in Pulmonary and Critical Care at UMASS Memorial Medical Center. After describing his education and employment history, Dr. Vallejo-Manzur states in his report:

> Through my experience, training and education as referenced above, and through my CV attached as an exhibit to this report, I am familiar with the usual standards of care of complex patients like Maria M. Cantu, who suffers from medical problems. Through my profession[al] activities and experiences I am familiar with the usual standard of care expected at such a facility, including its nursing staff and ancillary staff.

Although Dr. Vallejo-Manzur asserts that he is familiar with the usual standard of care for a facility such as Retama Manor, nothing in his report or in his curriculum vitae reveals how he became familiar with this standard of care. *See Ibrahim v. Gilbride*, No. 14-09-00938-CV, 2010 WL 5064430, at *6-8 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (concluding that expert was not qualified to render expert opinion when his report and curriculum vitae failed to describe *how* he acquired sufficient knowledge, skill, experience, training or education to opine on the accepted standard of care); *Pokluda*, 283 S.W.3d at 117 (providing that expert's qualifications must appear in his report or curriculum vitae and cannot be inferred). For example, neither document shows that Dr. Vallejo-Manzur has worked in a nursing facility or physical therapy facility, has supervised staff in a nursing facility or physical therapy facility, has served on any boards or commissions involved in setting guidelines for nursing facilities or physical therapists, or has trained nursing facility staff or physical therapists. "The test is whether the report and CV establish the witness's knowledge, skill, experience, training, or education regarding the specific issue before the court that would qualify the expert to give an opinion on the subject at issue." *Ibrahim*, 2010 WL 5064430, at *6. Here, the report and the curriculum vitae demonstrate no basis upon

which Dr. Vallejo-Manzur was qualified to render an expert opinion concerning the care and treatment Maria received or should have received from the nursing and physical therapy staff at Retama Manor. Therefore, the trial court abused its discretion in overruling Retama Manor's objections to Dr. Vallejo-Manzur's qualifications to render an expert opinion on the standard of care.

### *Standard of Care and Breach*

Retama Manor next argues the trial court should have sustained its objections on the standard of care and breach. Retama Manor objected that Dr. Vallejo-Manzur's opinions describing the standard of care and breach were conclusory, failed to adequately explain the basis of his opinions, and failed to identify the specific conduct that Retama Manor was supposed to perform but failed to perform.

The standard of care is what an ordinarily prudent health care provider would do under the same or similar circumstances. *See Palacios*, 46 S.W.3d at 880. "Identifying the standard of care is critical: Whether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently." *Id.* It is not sufficient for an expert simply to state that he knows the standard of care and assert it was not met. *Id.*

After a paragraph explaining his qualifications, Dr. Vallejo-Manzur's report states:

> I personally reviewed medical records pertaining to the care and treatment of Maria M. Cantu whose date of birth is October 11, 1926. After review of those medical records, it is my opinion that [] Retama Manor and its employees were negligent in the handling and dropping of Maria Cantu. [] Retama Manor provided physical therapy to Maria Cantu during her stay at the [n]ursing [h]ome. On June 13, 2011, physical therapist assistant, Mark West, dropped Maria Cantu when he attempted to put her back on her bed.

> Maria Cantu was under medication named Warfarin. It is medically known that this is a blood thinner. The side effects of this medication, combined with the dropping of Maria Cantu may have been fatal. The medical records display no notation of Maria Cantu being dropped. Attached to this Certificate of Merit [] is the affidavit of Leticia Cantu. Leticia Cantu discussed the dropping of Maria Cantu. This

incident was confirmed by [] Retama Manor staff member, Lisa Garza. The staff members at [] Retama Manor were negligent in not reporting the incident and not following proper protocol.

It is my medical expert opinion that Maria Cantu was handled in a negligent manner. I reserve the right to amend this report as additional information or evidence may be developed during the course of litigation.

Dr. Vallejo-Manzur's report fails to sufficiently explain the basis of his opinions concerning the standard of care and breach. In the report, Dr. Vallejo-Manzur never discusses the procedures that ordinarily prudent nursing facility employees follow when transferring a patient to a bed, nor does he discuss the procedures that ordinarily prudent nursing facility employees follow after a patient has fallen. Dr. Vallejo-Manzur opines that Retama Manor's employees were negligent without explaining how their conduct departed from what ordinarily prudent nursing facility employees would do under the same or similar circumstances. Dr. Vallejo-Manzur's report never provides specific information about what Retama Manor's employees, including West, should have done differently. Because Dr. Vallejo-Manzur's report is deficient in this regard, the trial court abused its discretion in overruling Retama Manor's objections to the report based on the standard of care and breach.

*Causation*

Retama Manor also argues the trial court should have sustained its objection as to causation. Retama Manor objected to Dr. Vallejo-Manzur's report because it failed to provide a fair summary of his opinions concerning causation, described only the possibility of causation in a conclusory fashion, and failed to link the facts of the case to his opinion regarding causation. An expert report must contain information concerning the expert's opinion on the causal relationship between the alleged breach and the injury, harm, or damages claimed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). In determining whether an expert report sufficiently sets forth a causal relationship, courts recognize that "[a]n expert cannot simply opine that the breach caused the

injury . . . . Instead, the expert must go further and explain, to a reasonable degree, how and why the breach caused the injury based on the facts presented." *Jelinek v. Casas*, 328 S.W.3d 526, 539-40 (Tex. 2010). While a fair summary is something less than all the evidence necessary to establish causation at trial, even a fair summary must contain sufficiently specific information to demonstrate causation beyond mere conjecture. *Hutchinson v. Montemayor*, 144 S.W.3d 614, 618 (Tex. App.—San Antonio 2004, no pet.).

As to causation, Dr. Vallejo-Manzur's report states only:

> Maria Cantu was under medication named Warfarin. It is medically known that this is a blood thinner. The side effects of this medication, combined with the dropping of Maria Cantu may have been fatal.

The report's statement regarding causation fails to explain how and why the allegedly negligent conduct—dropping Maria while transferring her to her bed and failing to report the incident and follow protocol—caused the injury. The report fails to contain sufficiently specific information to demonstrate causation beyond mere conjecture. Therefore, the trial court abused its discretion in overruling Retama Manor's objection to the report based on causation.

### *Disposition*

Retama Manor asks us not only to reverse the trial court's order overruling its objections and denying its motion to dismiss, but also to dismiss the Cantus' claims with prejudice. We decline to do so. We are guided by the Texas Supreme Court's decision in *Scoresby v. Santillan*, where it stated that "[a]n individual's lack of relevant qualifications and an opinion's inadequacies are deficiencies the plaintiff should be given an opportunity to cure if it is possible to do so." 346 S.W.3d 546, 549 (Tex. 2011); *see also Leland v. Brandal*, 257 S.W.3d 204, 207-08 (Tex. 2008) (holding that when an appellate court finds a deficiency in an expert report it has the discretion to remand the case to the trial court for consideration of a thirty-day extension to cure the deficiency). In *Scoresby*, the Texas Supreme Court articulated a "minimal standard" for determining whether

an extension may be granted to cure deficiencies in an expert report: "[A] thirty-day extension to cure deficiencies in an expert report may be granted if the report is served by the statutory deadline, if it contains the opinion of an individual with expertise that the claim has merit, and if the defendant's conduct is implicated." *Id*. at 557.

## CONCLUSION

We, therefore, reverse the trial court's order overruling the objections to the expert report and denying the motion to dismiss, and remand this case to the trial court for further proceedings consistent with this opinion. *See Carney v. Holder*, No. 12-13-00024-CV, 2014 WL 3939915, at *8 (Tex. App.—Tyler 2014, no pet.) (remanding to the trial court for a determination of whether the plaintiff should be afforded the opportunity to amend her expert report after concluding that the defendant's objections to the expert report should have been sustained); *Cortez v. Tomas*, No. 02-11-00231-CV, 2012 WL 407382, at *9 (Tex. App.—Fort Worth 2012, no pet.) (same).

Karen Angelini, Justice